IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

SEPTEMBER 1997 SESSION

FILED

April 7, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. No. 01C01-9509-CC-00302 |
| Appellee, | * | LINCOLN COUNTY |
| VS. | * | Hon. Charles Lee, Judge |
| JAMES RAY BARTLETT, | * | (DUI, Driving on Revoked License, |
| Appellant. | * | Reckless Driving, Evading Arrest) |

For Appellant:

A. Jackson Dearing, III
117 S. Main Street
Shelbyville, TN 37160
(on appeal)

Robert Peters
100 First Ave., S.W.
Third National Bank
Winchester, TN 37398
(at trial)

For Appellee:

Charles W. Burson
Attorney General & Reporter

Eugene J. Honea
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

Michael McCown
Attorney General
Marshall County Courthouse
Lewisburg, TN 37091

Charles Crawford
Assistant District Attorney General
215 E. College Street
Fayetteville, TN 37334

OPINION FILED:_____

AFFIRMED AS MODIFIED

GARY R. WADE, JUDGE

<u>OPINION</u>

The defendant, James Ray Bartlett, was indicted for DUI, driving on a revoked license, five counts of reckless driving, resisting arrest, evading arrest and reckless endangerment. At the close of the state's proof, the trial court granted the defendant's motion for acquittal as to the charge of resisting arrest. The jury rendered guilty verdicts as to the remaining counts. After setting aside the conviction for reckless endangerment, the trial court sentenced the defendant to ten months for the DUI; four months and fifteen days for driving on a revoked license; five months for the reckless driving convictions, all of which were merged as one offense; and ten months for evading arrest. The transcript of the trial indicates sentences were ordered to be served consecutively for an effective sentence of twenty-nine months fifteen days with the minimum service at seventy-five percent. The judgment form indicates concurrent sentencing for all new convictions. The trial court revoked the defendant's community corrections sentence for prior convictions; these new sentences were ordered to be served consecutively to the prior offenses according to the judgment form.

In this delayed appeal, the defendant presents the following issues for our review:

(I) whether the evidence was sufficient to support his convictions;

(II) whether the trial court erred by allowing the state to introduce inadmissible character evidence in violation of Rule 404, Tenn. R. Evid.; and

(III) whether the trial court erred in the length and manner of sentence imposed.

We find no error and affirm the judgment of the trial court. The judgments are modified to the extent necessary to reflect concurrent sentencing for these offenses which are to be served consecutively to the prior convictions.

We preface our discussion of the issues by the procedural history of this case. At the conclusion of the sentencing hearing on December 13, 1994, the hearing on the motion for new trial was set for a date almost two months later. The motion for new trial was not timely filed. At the hearing on the motion, the defendant, on the advice of his counsel who saw no issues for appeal, "withdr[e]w" his motion for a new trial before it was heard and informed the trial court that he would file a written "waiver." Thus, there was no hearing on the motion and no order of disposition at that time. Defense counsel did not file notice of appeal.

On May 1, 1995, defendant's newly appointed appellate counsel filed a notice of appeal and the trial court granted a delayed appeal. Because no hearing on the motion for new trial had been conducted, the cause was remanded for that purpose. State v. James Ray Bartlett, C.C.A. No. 01C01-9509-CC-00302, Order (Tenn. Crim. App., at Nashville, Feb. 26, 1996). The trial court denied a new trial and this appeal followed.

At trial, Cliff Page, who was related to the defendant by marriage, testified that between 9:30 P.M. and 10:45 P.M. on March 4, 1994, he saw the defendant driving his stepdaughter's Sunbird near the Dairy Queen. Page informed Officer Richard Howell, who was parked nearby in his police cruiser, that he had seen the defendant driving "all over the road[,] both lanes." Later, Page, who acknowledged his dislike for the defendant, saw him driving the same car near the

3

courthouse square. Page did not know how many passengers accompanied the defendant at the time and could not recognize them.

Sue Repasky, an employee of South Main Minimart, knew the defendant as a frequent store customer. On the date of the offense, she observed the defendant purchase a quart of beer between 10:00 P.M. and midnight. Ms. Repasky watched the defendant leave the store, step into a vehicle, and drive in the direction of the courthouse square.

Sam Rollins, a neighbor of the defendant, recalled seeing him near the courthouse square three or four times on that same evening between 7:00 and 10:00 P.M. When he last saw the defendant at about 10:00 P.M., the defendant was driving around the square. Rollins recalled hearing the defendant "take off" in his car and seeing the police officer engage the blue lights. He remembered there was at least one other passenger in the defendant's vehicle.

Deputy Sheriff Craig Bledsoe, who had known the defendant about two years, saw him driving around the courthouse square at about 10:00 P.M. on the night in question. Deputy Bledsoe, who was off-duty that night, did not detect any erratic driving on the part of the defendant at that time.

The defense stipulated that the defendant's driver's license had been revoked. He was not authorized to drive on the night of these offenses.

Officer Howell, who had worked for the Fayetteville Police Department for five years, had been assigned to the second shift on the night of the defendant's arrest. He recalled being approached by Page at about 10:00 P.M. and being

informed that the defendant was probably drunk and was driving recklessly on South Main Street in a Sunbird. When Officer Howell drove his cruiser in the direction of the courthouse square, he saw the defendant, who was wearing a denim shirt, jacket, and a black cap, driving a Sunbird automobile. Although he saw a passenger in the defendant's car, Officer Howell could not see him clearly from a distance of twenty-five to thirty feet. When Officer Howell approached the defendant's vehicle, the defendant "accelerated real fast," "started off the square," and ran a stop sign. Officer Howell activated his blue lights, siren, and video camera. During the pursuit, the defendant ran five stop signs and exceeded speeds of 100 miles per hour. When Officer Howell's cruiser had a flat tire, he sent a radio message to the dispatcher, changed his tire and, within twenty minutes, drove to the defendant's residence.

Officer Howell described the defendant as clearly under the influence. The defendant, who could not produce a driver's license, refused field sobriety and breath tests but admitted that he had consumed two quarts of beer. Officer Howell, who early the next morning swore out an arrest warrant for the defendant which included a description of the pursuit, failed to note that he had identified the defendant as the driver of the vehicle just prior to activating his blue lights. Instead, he wrote that the identification was made after the chase began. At trial, Officer Howell conceded that it would have been impossible to identify the driver after the pursuit was initiated. He explained that the oversight in his report, which was written at 3:00 A.M., was due to fatigue. Officer Howell recalled that when he arrived at the defendant's residence, four or five other officers were already on the scene. He remembered that the defendant's brother, Michael Bartlett, had claimed to be the driver of the vehicle.

5

Defense witness Marty Lyn Bryant claimed that he was with the defendant just prior to the police chase and testified that Michael Bartlett was the driver when he left the two men just before the chase began. He recalled that the defendant was in the back seat of the vehicle at that time.

Michael Bartlett, the nineteen-year-old brother of the defendant, testified that both he and his brother wore a mustache, beard, and long hair on the date in question. He claimed that he was wearing a light and dark blue shirt and remembered that he was not wearing his prescription glasses at the time because a lens had fallen out. He stated that the defendant wore a black George Dickel T-shirt. Michael Bartlett testified that he was driving when the officer activated his blue lights and that he "got scared and headed towards home." He explained that some of the police officers had been harassing his brother and he was afraid they were going to "start it with me." He drove the twelve miles home "pretty fast."

Michael Bartlett testified that when he arrived at their residence, he stayed in the yard and the defendant went inside. He claimed that when Officer Terry Quick arrived, he admitted that he was the driver and was searched, handcuffed, and placed in a patrol car. When Officer Howell arrived, however, five or ten minutes later, he was released and the defendant was arrested.

I

The defendant first challenges the sufficiency of the evidence as to each conviction. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of

6

conflicts in the proof are matters entrusted to the jury as triers of fact.  Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).  When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

There are statutory definitions for each of the offenses at issue.  "It is unlawful for any person ... to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads ... while under the influence of any intoxicant...."  Tenn. Code Ann. § 55-10-401(a) (1993).  "A person who drives a motor vehicle on any public highway ... at a time when a person's privilege to do so is ... revoked commits a Class B misdemeanor...."  Tenn. Code Ann. § 55-50-504(a)(1) (1993).  A person commits reckless driving who "drives any vehicle in willful or wanton disregard for the safety of persons or property...." Tenn. Code Ann. § 55-10-205(a) (1993).  The speed at which a motor vehicle travels may establish a willful and wanton disregard for persons or property.  State v. Wilkins, 654 S.W.2d 678 (Tenn. 1983); Bowers v. Thompson, 688 S.W.2d 827 (Tenn. App. 1984).  A person evades arrest who, "intentionally flee[s] from anyone the person knows to be a law enforcement officer and the person ... [k]now[s] the officer is attempting to arrest the person...."  Tenn. Code Ann. § 39-16-603(a)(1)(1989).

A person acts intentionally with respect to the nature of conduct or the results that flow therefrom, "when it is the person's conscious objective or desire to engage in the conduct or cause the result."  Tenn. Code Ann. § 39-13-302(a).  A person acts knowingly with respect to conduct or circumstances, "when the person is aware of the nature of the conduct or that circumstances exist.  A person acts

7

knowingly with respect to a result ... when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b).

With its verdict, the jury accredited the testimony of the state's witnesses. That was clearly their prerogative. The trial testimony established each of the elements necessary for all four offenses. The defendant acknowledged having consumed two quarts of beer just prior to his arrest. The jury believed Officer Howell's assertion that the defendant was intoxicated and that he was the operator of the vehicle. Thus, there was sufficient evidence to support the conviction for driving under the influence and driving on a revoked license.

The proof was also sufficient to establish that the defendant had driven recklessly. The video tape of the chase scene established that the defendant ran five stop signs. Officer Howell testified that the defendant exceeded speeds of 100 m.p.h. One vehicle was driven onto the curb in order to avoid a collision. In our view, these actions establish a willful and wanton disregard for the safety of others. Finally, instead of yielding to the blue lights of Officer Howell's police vehicle, the defendant accelerated and sped away from the courthouse square in his attempt to avoid arrest. The defendant took a circuitous route through and out of town in an attempt to evade the police. That evidence was sufficient to support the conviction for evading arrest.

II

Next, the defendant argues that certain of the testimony was inadmissible and should have been excluded by the trial court. He specifically argues that Rule 404(b), Tenn. R. Evid., requires exclusion of the testimony of Page and Rollins who observed the defendant driving the Sunbird vehicle between 7:00

8

and 9:00 P.M. on March 4, 1994. He complains that these prior incidents constitute inadmissible character evidence of other wrongs or acts. In response, the state contends the evidence is simply not character evidence.

Generally, the standard of review of evidentiary rulings by a trial court is one of abuse of discretion; however, when the issue regards Rule 404(b), Tenn. R. Evid., the trial court must "upon request" hold a jury out hearing, make a determination of relevancy, and find that the probative value of the evidence is not outweighed by unfair prejudice. Tenn. R. Evid. 404(b)(1),(2),(3). Where a court fails to substantially comply with these requirements, the court's decision is afforded no deference. State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997). In this instance, defense counsel did not request a jury out hearing and the trial court did not order one. In our view, however, the trial court substantially complied with the rule. Thus, the abuse of discretion standard is applicable.

Rule 404(b) provides as follows:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). In several prior cases, our appellate courts have held that the rule operates to exclude evidence of other crimes, wrongs or acts only when

9

they are "wholly independent of that for which [the defendant] is charged." State v. Howell, 868 S.W.2d 238, 254 (Tenn. 1993); State v. King, 718 S.W.2d 241 (Tenn. 1986).

Each count of the indictment against the defendant charges that the offense occurred on March 4, 1994. There is no reference to specific time. The video tape showed that the offense occurred between 10:13 and 10:21 P.M. Page testified that he saw the defendant driving between 9:30 and 10:45 P.M., clearly within the time frame of Officer Howell's high-speed chase of the defendant. Thus, the crimes charged did not qualify as "separate" under the prohibitions of Rule 404(b). Rollins testified that he saw the defendant three or four times on March 4, 1994, beginning as early as 7:00 P.M.; he testified that he observed the defendant driving the vehicle at approximately 10:00 P.M. Again, the event was not "separate." Thus, the evidence admitted at trial was not inadmissible character evidence.

III

The defendant also challenges the length of sentencing. He argues that the ten-month sentence is excessive for an act that spanned no more than ten minutes and twelve miles. He reasons that no one was injured and no property was damaged.

This sentence is controlled by the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. § 40-35-117(b). When a challenge is made to the length, range, or manner of the service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). The

Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of a sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statement made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In misdemeanor sentencing, the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. The sentence must be specific and consistent with the purposes of the Act. Tenn. Code Ann. § 40-35-302(a), (b). A percentage of not greater than seventy-five percent of the sentence should be fixed for a service for a misdemeanor offender; however, a DUI offender may be required to serve the full one hundred percent of his sentence. Tenn. Code Ann. § 40-35-302(d); Palmer v. State, 902 S.W.2d 391, 393-94 (Tenn. 1995). In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Tenn. Code Ann. § 40-35-302(d).

Upon service of that percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. The trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn.

Code Ann. § 40-35-302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn. Code Ann. § 40-35-302(f). The statutory scheme is designed to provide the trial court with continuing jurisdiction in the misdemeanor case and a wide latitude of flexibility. The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

For each conviction, the trial court applied principles of the 1989 Act, including enhancing or mitigating factors. For the DUI conviction, which has a minimum sentence of forty-eight hours and a maximum sentence of eleven months and twenty-nine days, the trial court imposed a ten-month sentence. The court found no mitigating factors and applied the following enhancing factors to arrive at the sentence:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and,
>
> (13) The felony was committed while on any of the following forms of release status if such release is from a prior felony conviction: ... (C) Probation[.]

Tenn. Code Ann. § 40-35-114(1), (8), (13)(C) (Supp. 1993). The trial court properly applied factor (1); the defendant has a history of criminal behavior and convictions including theft, aggravated assault, aggravated burglary and larceny, among others. The defendant also has a history of probation violations, thus application of (8) was also proper. Because, however, (13)(C) does not apply to misdemeanors, that enhancement factor was misapplied. Nonetheless, the significant weight attached to the two applicable enhancement factors would warrant the ten-month sentence.

12

The trial court imposed a four-month-fifteen-day sentence for the conviction of driving on a revoked license. The single mitigating factor was that no serious bodily injury was threatened or caused by the defendant's committing this offense. The same three enhancing factors for the DUI offense were applied to this offense. The application of (1) and (8) were proper, but (13)(C) was improper. In our view, the sentence should remain the same.

Reckless driving, a Class B misdemeanor, may include a sentence of not more than six months. The trial court sentenced the defendant to five months. The trial court again properly applied enhancements (1) and (8), and improperly attached (13)(C). In addition, the trial court identified the following as enhancement factors:

> (2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;
>
> (3) The offense involved more than one (1) victim; and
>
> (7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement[.]

Tenn. Code Ann. § 40-35-114 (Supp. 1993). Because the defendant was the sole driver and the only person charged with an offense, the state agrees that (2) was improperly applied. The application of (3) was also improper in that the defendant caused no injuries or property damage. See State v. Raines, 882 S.W.2d 376 (Tenn. Crim. App. 1994). Because there was no victim in this case, enhancement factor (7) was not applicable. Nonetheless, the defendant drove through five intersections at high rates of speed while intoxicated and without a valid driver's license. The applicable enhancement factors, in our view, are entitled to significant weight. The defendant did not receive the maximum term. Thus, we find the reckless driving sentence of five months appropriate.

13

Evading arrest is a Class A misdemeanor and may include a sentence of not more than eleven months and twenty-nine days.  The trial court imposed a ten-month sentence and applied factors (1), (2), (7), (8), and (13)(C), as previously set forth in this opinion, and one additional factor:  "(9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense."  Tenn. Code Ann. § 40-35-114(9) (Supp. 1993).  The state concedes that factors (2), (7), (9), and (13)(C) should not have been applied and are not supported by the record.  Only (1) and (8) were properly applied.  Nonetheless, the defendant's sentence is within the range specified by the statute and less than the maximum possible.  We attach considerable weight to the defendant's prior record, his lack of candor, and his heedless disregard for the authority of law enforcement.  The ten-month sentence is just.

The state would have this court uphold the defendant's sentences for evading arrest by the application of the following additional enhancement factors:

> (10) The defendant had no hesitation about committing a crime when the risk to human life was high;

> (15) The defendant abused a position of public or private trust...; and

> (16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

Tenn. Code Ann. § 40-35-114 (10), (15), (16) (Supp. 1993).  The application of enhancement factor (10) is appropriate not only for evading arrest but also for the reckless driving offense.  The defendant showed no hesitation in endangering the lives of other motorists for the entire length of the police chase.  Because the trial court failed to apply (16), we are hesitant to do so.  No particular facts in the record would support that.  While the defendant was a participant in the Community Corrections program when these offenses occurred, we do not classify these

14

offenses as a violation of public trust. Because the trial judge properly applied an enhancement for failure to comply with sentencing on release to the community, the inclusion of (15) would be a duplication.

Consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6) The defendant is sentenced for an offense committed while on probation;
>
> (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). Even if the court finds one of these factors applicable, however, aggravating circumstances must be present before consecutive sentences may be imposed. Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976).

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present: (a) that the crimes involve aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses. Gray, 538 S.W.2d at 393. In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct." The Wilkerson decision, which modified somewhat the strict, factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." Wilkerson, 905 S.W.2d at 938.

The state concedes that the trial court failed to make findings of fact to support consecutive sentencing as required by law. The judgment forms for each conviction show all sentences are concurrent to each other and consecutive to the defendant's prior felony sentences. That appears to have been the intent of the trial court.

Accordingly, the defendant's convictions are affirmed. The sentences are modified to conform to the judgment entered by the trial judge, all to be served at seventy-five percent minimum service.

_____
Gary R. Wade, Judge

16

CONCUR:


_____

Thomas T. Woodall, Judge


_____

Curwood Witt, Judge

17