IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 17, 2003

## MILBURN L. EDWARDS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 90-S-1098     J. Randall Wyatt, Jr., Judge**

---

**No. M2002-02124-CCA-R3-PC - Filed December 15, 2003**

---

Petitioner, Milburn L. Edwards, filed a petition for post-conviction relief, which was subsequently amended. Following an evidentiary hearing, the petition for post-conviction relief was dismissed. On appeal, Petitioner argues (1) that the post-conviction court erred in not stating its findings of fact and conclusions of law in its order denying Petitioner post-conviction relief; (2) that Petitioner received ineffective assistance of counsel at trial and on appeal; and (3) that Petitioner was not afforded a full and fair evidentiary hearing. After a thorough review of the record, we find no error and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Dwight E. Scott and Paul Walwyn, (at trial) Nashville, Tennessee; and Milburn L. Edwards, *pro se*, (on appeal) for the petitioner, Milburn L. Edwards.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Katrin Miller, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

## I. Background

Following a jury trial, Petitioner was convicted of twenty-one counts of rape, two counts of first degree burglary, two counts of aggravated burglary, and one count each of second degree burglary, aggravated rape, assault with intent to commit rape, and robbery. Petitioner received an effective sentence of life plus 415 years. The facts surrounding Petitioner's convictions were

summarized by this Court in the direct appeal in *State v. Edwards*, 868 S.W.2d 682 (Tenn. Crim. App. 1993) as follows:

### A. Counts One through Five

At approximately 5:00 A.M. September 24, 1988, Deborah Lee Doty, asleep on the living room couch of her West Nashville apartment, was awakened by an intruder. Expecting company, she had left her door unlocked. No apartment lights were on but there was a full moon and exterior lighting. Her assailant told her to be quiet, threatened to hit her, and asked for money. He then digitally penetrated the victim's vagina and directed her to the bedroom. When she struggled, he struck her head against the wall, penetrated her digitally on two more occasions, and penetrated her with his penis on one occasion. The assault lasted approximately 20 minutes.

Ms. Doty called police and was taken for an examination. Results were negative for semen. She described penetration as minimal because the assailant did not have an erection. Ms. Doty described her assailant as black, having short hair, about five feet eight inches tall, and approximately 160 pounds. Ms. Doty looked at two photographic lineups but made no identification. She then observed two physical lineups. In the second, she identified the defendant as her assailant. The defendant was in neither of the photographic arrays and only in the second of the two lineups. She also made an in-court identification.

This incident led to five separate convictions: first degree burglary for the entry; rape for the digital penetration in the living room; rape for the first digital penetration in the bedroom; rape for the second digital penetration in the bedroom; and rape for the penile penetration in the bedroom.

### B. Counts Six and Seven

At approximately 10:30 A.M. on October 18, 1988, Katherine Dobson was awakened in her apartment by a black man wearing pantyhose over his head. Like Ms. Doty, Ms. Dobson lived on Acklen Park Drive in West Nashville. As the assailant gagged Ms. Dobson with a scarf, she bit him. In return, he hit her in the face. As she continued to struggle, he punched her in the eye, slammed her against the wall, and placed the gag around her neck, threatening to choke her if she screamed. When the assailant digitally penetrated his victim, there was a knock on the door. Ms. Dobson freed herself and ran toward the door. Her assailant escaped through a bedroom window. Ms. Dobson described her attacker to police as a black male in his twenties, five feet eight to five feet ten inches in height, and approximately 160 pounds.

Ms. Dobson was taken by ambulance to the Vanderbilt Hospital. As a result of the attack, she suffered a black eye, a shoulder strain, and bruises to her mouth, neck,

-2-

chest, shoulder, and hip. Later, Ms. Dobson and her roommate found a shirt, a pack of Kool cigarettes, and a watch, all of which had apparently been left by the assailant.

A maintenance worker observed a shirtless, black man wearing hose over his head leave the Dobson apartment from a bedroom window. Charlene Cotten, who divorced the defendant in June of 1990, testified that the defendant smoked Kool cigarettes while they were married and that she had seen him purchase a shirt "like that" found in Ms. Dobson's apartment. She stated that the defendant, on two occasions, left their residence in the early morning hours without explanation; he often stayed away from home all night on the weekends. Latent fingerprints were found on an interior door knob of Dobson's apartment and the cigarette package. Upon expert analysis, it was determined that the fingerprint on the package was that of the defendant.

Upon these facts, the defendant was convicted of second degree burglary and aggravated rape.

### C. Counts Eight through Ten

At approximately 2:30 A.M. on March 29, 1989, Mary Jane Cockerville was awakened in the bedroom of her West Nashville apartment. Her assailant placed his hand over her mouth, told her to be quiet, and started to climb into her bed. Ms. Cockerville struggled, freed herself, and called for her roommate. Startled, the assailant ran out the back door. The victim found her purse open and $10.00 to $12.00 missing. A subsequent investigation indicated that the assailant had entered the apartment by forcing open a locked kitchen window. There was a chair under the window on the outside of the residence.

The victim, who sustained several bruises and a laceration to her lip, described her assailant as a black man in his late twenties or thirties, approximately six feet tall, and with a minimum build. She said he had short hair, wore a stocking cap, and smelled "like the grime of a mechanic shop." Some 14 months later, she identified the defendant in a lineup. At trial, Ms. Cockerville again identified the defendant as her assailant.

Based upon these events, the defendant was convicted of first degree burglary . . ., and assault with intent to commit rape . . . . He was acquitted on a robbery charge.

### D. Counts Eleven through Twenty-Six

At approximately 5:30 A.M. on April 4, 1990, Kimberly Gugler was awakened in the bedroom of her West Nashville apartment. A black male with a cloth in his hand was standing beside her bed. He covered her eyes, face, and mouth and told her not to

talk. As the assailant held the victim between the wall and bed, he penetrated her vagina digitally. During the assault, he penetrated the victim's vagina with his fingers and his penis. He fondled her breasts, penetrated her rectum with his finger and penis, and performed cunnilingus. Ms. Gugler testified that her assailant penetrated her digitally "about four times" and with his penis "around five times."

After this attack, the assailant forced his victim into the hallway and asked for "lotion or grease." When she said no, he turned on the light, found some lotion, and then turned the light out. The assailant applied the lotion and vaginally penetrated the victim with both his penis and his finger: "probably twice more with his finger and once or twice more with his penis."

The ordeal lasted between 45 minutes and an hour. The assailant left through the front door. Fifty dollars had been taken from a wallet inside a backpack in the victim's living room. Ms. Gugler testified that her assailant was a black male, five feet nine inches to five feet eleven inches in height and weighing 170 to 180 pounds. He had short hair, small ears, and smelled like a "petroleum product."

Later, Ms. Gugler helped police prepare a composite of the defendant. She was not, however, satisfied with the results. She was unable to make an identification from two photographic arrays but was able to make a positive identification at a subsequent lineup. At trial, she identified the defendant as her assailant.

For these acts, the defendant was convicted of aggravated burglary; four digital-vaginal rapes in the bedroom; five penile-vaginal rapes in the bedroom; rape by cunnilingus in the bedroom; digital-anal rape in the bedroom; and penile-anal rape in the bedroom. Additionally, there were convictions for digital-vaginal rape and penile-vaginal rape in the bathroom hallway and robbery.

## E. Counts Twenty-Seven through Thirty

On April 29, 1990, at about 6:30 A.M., Andrea Haygis, a student from Germany, was awakened in her West Nashville apartment by a black male intruder. When she screamed, he placed his hand over her mouth and told her to be quiet, else he would hit her. On two occasions, the assailant digitally penetrated her vagina. As she lay on her stomach, he attempted to penetrate her vagina with his penis. He then turned her over, directed her to keep her eyes closed, and attempted to penetrate both her vagina and her rectum with his penis. He was able to accomplish a vaginal penetration.

The victim described her assailant as having short hair and smelling of alcohol. Upon medical examination, sperm was found from a vaginal swab. Ms. Haygis did not get a good look at her assailant. She was unable to identify her attacker in a lineup. Heather Horne, a resident of the apartment unit next to Ms. Haygis testified that five

days before the attack, she was startled by a black male trying to break into her bedroom window. She identified the defendant as the perpetrator.

Another resident, Jane Graham, testified that she saw the defendant in the apartment complex on five separate occasions during the two weeks prior to the assault upon Ms. Haygis. On the first occasion, about one week before the attack, the defendant was standing outside the Horne and Haygis apartment units. On the last occasion, Ms. Graham saw him looking through the window of another apartment; at that time she obtained his license number. On the day following the Haygis burglary and assault, the witness gave the information to police. She was unable to identify the defendant from a photographic array, but made a "tentative" identification in a second. Ms. Graham was able to make a positive identification of the defendant at a lineup and did so again at trial. Police found the defendant driving the vehicle with the license number supplied by this witness. The defendant was the registered owner.

After the arrest of the defendant, the police took possession of his car. A search yielded one Columbian coin and one German coin minted in 1988. Ms. Haygis reported to police that she had some German and Mexican coins in her bedside drawer at the time of her attack. A serologist with the Tennessee Bureau of Investigation examined the semen discovered in vaginal swabs of Ms. Doty and Ms. Haygis and that found in sweat pants obtained from Ms. Gugler. She determined that Ms. Doty's assailant was a non-secreter or an A-secreter; Ms. Gugler's assailant was a non-secreter; and that Ms. Haygis' assailant was either a non-secreter or an A-secreter who is a PGM Type 2-1 (a blood antigen type), a combination which represents approximately nine percent of the population and of which the defendant is a part.

An FBI DNA analyst was unable to make a determination of the semen found on Ms. Haygis. The defendant matched three out of four probes on the semen found on Ms. Gugler's clothing. He testified that the likelihood of finding another unrelated individual, chosen at random from the population with the same "banding pattern" of the defendant would be one in four million.

For the Haygis incident, the defendant was convicted of aggravated burglary and three counts of rape.

*Edwards*, 868 S.W.2d at 687-90.

Petitioner raised six issues on appeal: (1) whether the trial court erred by denying a defense motion to sever the offenses; (2) whether the trial court erred by denying a defense motion to suppress the identification testimony of Kimberly Gugler and Jane Graham; (3) whether the trial court erred in denying a defense motion to employ a DNA expert at state expense; (4) whether the trial court erred by admitting the hospital records of Katherine Dobson into evidence; (5) whether

-5-

the evidence was sufficient as to count 26, the robbery of Kimberly Gugler; and (6) whether the trial court erred in sentencing Petitioner.

The Court upheld Petitioner's convictions on appeal but modified his sentence from an effective sentence of life plus 415 years to an effective sentence of life plus 195 years. *Edwards*, 868 S.W.2d at 705. The supreme court denied Petitioner's application for permission to appeal on August 2, 1993.

Petitioner filed a petition for post-conviction relief on May 3, 1996 which was subsequently amended five times. Petitioner's hearing commenced on December 13, 2000. After a day of testimony, the trial court continued the hearing to give Petitioner time to present all of the issues he wished to raise. The second day of Petitioner's post-conviction hearing was held on May 22, 2002. Petitioner was represented by Dwight E. Scott during the first day of his post-conviction hearing. Petitioner acted *pro se* with Paul Walwyn acting as "elbow" counsel to assist him on the second day of his hearing. Petitioner testified at the first hearing, and his trial counsel, Laura Dykes and Karl Dean, and appellate counsel, Jeff DeVasher, testified at both hearings.

After the conclusion of the post-conviction hearing, the trial court denied Petitioner's petition for post-conviction relief. Based on the testimony presented at the hearings, the trial court found that Petitioner's trial and appellate counsel ably and thoroughly prepared for Petitioner's trial and defense, and appeal. Further, the trial court found that Petitioner had failed to produce any evidence to support his allegations that his trial and appellate counsel rendered ineffective assistance of counsel, that his prior convictions were based on illegally obtained guilty pleas, that his trial and appellate counsel were not truthful during the post-conviction hearings, and that Petitioner's counsel, the prosecution, and the police department were all involved in a conspiracy to secure Petitioner's convictions. The trial court concluded that Petitioner had failed to sustain his burden of proving that his trial and appellate counsel were deficient or that any errors in performance were, in fact, prejudicial. By its judgment, the trial court implicitly accredited the testimony of Petitioner's counsel.

In his appeal, Petitioner raises three general issues: (1) the post-conviction court failed to include findings of fact and conclusions of law in its order denying Petitioner post-conviction relief; (2) the trial court erred in finding that Petitioner failed to sustain his burden of proof as to his allegations of ineffective assistance of counsel; and (3) Petitioner did not receive a full and fair hearing on his petition for post-conviction relief.

## II. The Trial Court Failed to Make Findings of Fact and Conclusions of Law in its Order Denying Petitioner Post-Conviction Relief.

Petitioner argues that the post-conviction court failed to make the requisite findings of fact and conclusions of law mandated by Tennessee Code Annotated section 40-30-211(b). Upon the conclusion of a post-conviction hearing, the court is required to set forth all of the grounds presented by the petitioner and its findings of fact and conclusions of law as to each ground in a written order

or memorandum. Tenn. Code Ann. § 40-30-211(b). The purpose of this requirement is to facilitate appellate review of the post-conviction court's decision. *See State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984) (analyzing the requirement that the post-conviction court enter a written order containing findings of fact and conclusions of law for each issue presented by the petitioner under prior law). This Court has previously concluded that reversal is not required if the record is otherwise adequate for review. *Randy Caldwell and Stevie W. Caldwell v. State*, No. M2001-00334-CCA-R3-PC, 2002 WL 31730875, *13 (Tenn. Crim. App., Nashville, Dec. 4, 2002); *State v. William Makransky*, No. E2000-00048-CCA-R3-CD, 2001 WL 725303, *12 (Tenn. Crim. App., Knoxville, June 28, 2003).

Although the post-conviction court did not set forth its findings of fact and conclusions of law as to each issue, the post-conviction court found as to all claims of ineffective assistance of counsel that Petitioner's trial and appellate counsel were experienced and qualified. The post-conviction court further found that counsel were adequately prepared for trial. As to Petitioner's allegations that his counsel were not truthful and that his counsel, the police and the prosecution were engaged in a conspiracy against him, the post-conviction court specifically found no evidence to support this allegation thereby implicitly accrediting counsel's testimony and discrediting Petitioner's testimony. Based on the testimony and the evidence produced at trial, the post-conviction court concluded that Petitioner had failed to establish either that his counsel's conduct was deficient or that he suffered any prejudice. The post-conviction court's findings of fact and conclusions of law are sufficient to allow for proper appellate review. Petitioner is not entitled to relief on this issue.

### III.  Ineffective Assistance of Counsel

In his appeal, Petitioner alleges that his trial and appellate counsel rendered ineffective assistance of counsel. A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The trial court's findings of fact in a post-conviction hearing are afforded the weight of a jury verdict. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Therefore, this Court  may not re-weigh or re-evaluate these findings nor substitute its inferences for those of the trial judge unless the evidence in the record preponderates against those findings. *State v. Honeycutt*, 54 S.W.3d 762, 763 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). In addition, questions concerning the credibility of witnesses and the weight and value given their testimony is resolved by the trial court, and not this Court. *Id*. However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *Burns*, 6 S.W.3d at 461.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his

defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

### A. Failure to Challenge Petitioner's Arrest Warrant

Petitioner alleges that his trial counsel rendered ineffective assistance of counsel by failing to challenge Petitioner's arrest on the grounds that the police lacked probable cause to secure a warrant. In a related allegation, Petitioner contends that his trial counsel were ineffective when they failed to move the trial court to suppress evidence relating to Petitioner's fingerprints obtained as a result of his "illegal" arrest. Mr. Dean testified that he and Ms. Dykes were not appointed to represent Petitioner until shortly before Petitioner's trial began. It was Mr. Dean's recollection, however, that the police initially stopped Petitioner in his car on May 7, 1990 because his license plate number matched the number previously provided by Ms. Graham in connection with the assault and burglary of Ms. Haygis.

It was Mr. Dean's understanding that a routine check of Petitioner's driver's license during the investigatory stop revealed an outstanding warrant for Petitioner's arrest. The police escorted Petitioner to the police station where he was booked and fingerprinted. A latent fingerprint taken from the cellophane wrapper of a pack of cigarettes left behind by the perpetrator of the offenses against Ms. Dobson in 1988 matched the fingerprint of Petitioner's second finger. On the basis of this evidence as well as Ms. Dobson's description of her attacker, Petitioner was then arrested on May 7, 1990 for the offenses of burglary and aggravated rape against Ms. Dobson.

Both Ms. Dykes and Mr. Dean testified that they reviewed Petitioner's arrest warrant but did not challenge the legality of his arrest. Petitioner offers no basis for challenging his arrest other than an unsupported allegation that Officer Brad Worthington lied in the affidavit supporting the arrest warrant.

Ms. Graham observed Petitioner in the vicinity of Ms. Haygis' apartment complex on five separate occasions before Ms. Haygis was attacked. On the last occasion, Ms. Graham recorded Petitioner's license plate number and later gave it to the police officers who were investigating Ms. Haygis' case. A police officer may make an investigatory stop of an automobile when the officer has a reasonable suspicion supported by specific and articulable facts that a criminal offense has occurred. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). The facts supporting an investigatory stop may rest on information obtained from a citizen such as Ms. Graham. *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981). If an outstanding warrant against the driver is revealed during an investigatory stop, the police officers may place the driver under arrest and escort him to the police station. *Watkins*, 827 S.W.2d at 295.

After Petitioner was booked, a fingerprint comparison revealed that one of Petitioner's fingerprints matched a fingerprint obtained from the scene of Ms. Dobson's attack in 1988. Arrest warrants may be issued upon a showing of probable cause. U. S. Const. amend. IV; Tenn. Const., art. I, § 7; Tenn. Code Ann. § 40-6-205; Tenn. R. Crim. P. 4(a). Probable cause is a "reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998).

We acknowledge that Petitioner's version of his arrest as related in his brief varies from that recalled by his counsel during their testimony at the post-conviction hearing. The post-conviction court, however, implicitly accredited the testimony of Petitioner's trial counsel and found that his trial counsel were not deficient for failing to challenge the legality of Petitioner's arrest or in failing to file a motion to suppress the evidence obtained after Petitioner's arrest. The evidence in the record does not preponderate against this finding. Petitioner is not entitled to relief on this issue.

### B. Delay Between Commission of Offense and Trial

Petitioner argues that the delays between the commission of the offenses against Ms. Dobson in 1988 and his arrest in 1990, and between his arrest in 1990 and his trial in 1991 violated his constitutional rights to due process and a speedy trial. In his petition, Petitioner did not raise this issue under a claim of ineffective assistance of counsel. At the post-conviction hearing, however, Petitioner questioned Mr. Dean about whether or not he had filed a motion for a speedy trial, and Mr. Dean responded that he did not remember. Mr. Dean also said that he did not remember any concerns over the police officers' failure to match the 1988 fingerprints to Petitioner's 1982 fingerprints until 1990.

In his brief, Petitioner merely states that he asked his trial counsel to file a motion for a speedy trial and they did not do so. A bare allegation that his trial counsel failed to file a motion "carr[ies] neither a hint of deficient performance nor a glint of those actions prejudicing [Petitioner] at his trial." *Pewitt v. State*, 1 S.W.3d 674, 676 (Tenn. Crim. App. 1999). Rule 27 of the Tennessee Rules of Appellate Procedure provides in part that:

The brief of the appellant shall contain . . . An argument, which may be preceded by a summary of argument, setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]

Tenn. R. App. P. 27(a)(7). Issues which are not supported by argument are treated as waived. Tenn. Ct. Crim. App. R. 10(b). Moreover, the direct issue involving an allegation of constitutional deprivations based on the lack of a speedy trial was not raised on direct appeal and is waived for purposes of the post-conviction proceeding. *See* Tenn. Code Ann. § 40-30-206(g). Petitioner is not entitled to relief on this issue.

## C. Failure to Raise Conspiracy Defense

Petitioner next raises two issues concerning ineffective assistance of counsel which relate to his trial counsels' investigation of his case. Petitioner argues that his trial counsel failed to heed his contention that the Metro Police Department planted evidence against him in order to secure his convictions for the charged offenses. In support of his theory, Petitioner presented a copy of a traffic accident report dated December 19, 1989 at the post-conviction hearing. According to the accident report, the car of Officer Willie Arnold, a member of the Metro Nashville Police Department, was struck by Petitioner's vehicle when Officer Arnold turned left in front of Petitioner while attempting to obtain the license plate number of a third car. Petitioner subsequently filed a lawsuit against Officer Arnold in the Davidson County Circuit Court. Although Petitioner testified that he filed the lawsuit in 1989, the face of the copy of the complaint included in the record is recorded as received by the clerk of the court on August 20, 1990, approximately two months after Petitioner's arrest. Petitioner also testified that at some point in time Officer Arnold called him and told Petitioner "he was going to get [him]."

Petitioner theorizes that the animosity resulting from Petitioner's personal lawsuit against Officer Arnold prompted the Metro Police Department to plant evidence connecting Petitioner to the charged offenses. Specifically, Petitioner surmises that officers could have placed the pack of cigarettes containing his fingerprints and his blue shirt at Ms. Dobson's residence and could have placed the Columbian and German coins in his car after the attack on Ms. Haygis.

In addition, Petitioner said that he hired an investigator to check the personnel files of all of the police officers who investigated Petitioner's case. The investigator eventually discovered that Officer Aubrey Turner was suspended for thirty days in 1979 for "violation of MPD Rules and Regulations Ch.13.264, devoting entire time to duty, and Ch.13.292, false or inaccurate reports, and drinking on duty." Petitioner alleges that his trial counsel was deficient for not discovering Officer Turner's suspension twelve years earlier and using this disciplinary action to impeach Officer Turner's credibility. Moreover, based on this report, Petitioner surmises that Officer Turner was the officer who planted the evidence against him.

Mr. Dean testified that he did not investigate Petitioner's conspiracy theory. Petitioner's defense at trial was based on mistaken identity and in support of this defense several alibi witnesses testified as to Petitioner's whereabouts when the offenses allegedly occurred. Mr. Dean also recollected that Petitioner had suggested as a possible alternative defense that one of the victims had consented to his sexual advances, but Petitioner's suggestion was not seriously pursued.

In reviewing claims of ineffective assistance of counsel, we reiterate that this Court will not second-guess trial counsel's tactical and strategic decisions pertaining to defense matters. *Cooper v. State*, 849 S.W.2d 744, 746 (Tenn. 1993). "When a petitioner contends that trial counsel failed to discover, interview or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Petitioner presented no evidence at the post-conviction hearing that would elevate his allegation of a conspiracy above the realm of mere speculation. The evidence in the record does not preponderate against the trial court's finding that Petitioner received effective assistance of counsel at trial. Petitioner is not entitled to relief on this issue.

### D. Identification Issues

Petitioner first contends that Detective Turner sequestered some of the victims out of his trial counsel's presence during the physical lineup procedures on May 24, 1990 and coerced the victims into identifying Petitioner as the perpetrator. It appears from his brief that Petitioner does not claim that his trial counsel were ineffective during the identification process but instead alleges that Detective Turner's conduct prevented him from receiving the assistance of counsel at all during the physical lineup procedure. Petitioner, however, failed to raise this issue on direct appeal, and the issue is accordingly waived for purposes of the post-conviction proceedings. *See* Tenn. Code Ann. § 40-30-206 (g). Moreover, this Court has previously determined that the victims' identifications of Petitioner as the perpetrator of the offenses during the physical lineup held prior to trial were reliable and therefore admissible. *Edwards*, 868 S.W.2d at 695. Petitioner is not entitled to relief on this issue.

Petitioner next contends that his trial counsel was deficient for failing to file a motion to suppress three of the victims' in-court identifications of Petitioner. Mr. Dean testified at the post-conviction hearing that he did request suppression of two of the victims' identifications, but not the other three. Petitioner contends that it was impossible for these victims to identify him in court because their initial description of the perpetrator did not match Petitioner's physical appearance. The evidence in the record does not preponderate against the trial court's finding that Petitioner received effective assistance of counsel at trial. Petitioner is not entitled to relief on this issue.

### E. Failure to Request a Special Jury Instruction on Identification

Petitioner contends that his trial counsel were ineffective because they failed to request a special jury instruction concerning identification. Mr. Dean testified that he recollected the trial court's jury instruction on this issue was "fairly extensive". The post-conviction court implicitly

found Mr. Dean's testimony credible. Petitioner does not explain or even suggest what the jury instruction should have been. The evidence in the record does not preponderate against the trial court's finding that his trial counsel rendered effective assistance of counsel. Petitioner is not entitled to relief on this issue.

### F. Failure to Challenge the Sufficiency of the Convicting Evidence on Appeal

Petitioner contends that his appellate counsel's conduct was deficient when he failed to challenge the sufficiency of the convicting evidence for all of Petitioner's convictions on appeal. In a similar vein, Petitioner also argues that his trial counsel rendered ineffective assistance for failing to preserve for appeal the State's failure to prove certain elements of the various charged offenses beyond a reasonable doubt. Specifically, Petitioner contends that the State failed to prove that he was the perpetrator of the offenses in counts one through five, eight through ten, and twenty-seven through thirty, and that the State failed to prove beyond a reasonable doubt that he raped Ms. Gugler fourteen times or that he raped Ms. Dobson at all. Although couched in terms of drafting a deficient motion for a new trial, these allegations essentially involve challenges to the sufficiency of the convicting evidence which are more appropriately addressed in terms of the effectiveness of his appellate counsel. In general, issues involving errors in the admission or exclusion of evidence, jury instructions, or other actions occurring during the trial are waived unless specifically stated in the defendant's motion for a new trial. Tenn. R. App. P. 3(e). The purpose of the rule is to extend to the trial court the opportunity to consider, and correct if necessary, an alleged error before the appellate process begins. *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). The waiver provisions of Rule 3(e), however, do not extend to a challenge to the sufficiency of the convicting evidence which, if meritorious, would result in the dismissal of the prosecution against the accused. Tenn. R. App. P. 13(e); *State v. Patterson,* 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997); *Keel*, 882 S.W.2d at 416. Allegations that the State failed to prove Petitioner's identity as the perpetrator of the charged offenses or that Petitioner committed the offenses as charged call into question the sufficiency of the convicting evidence.

Having said that, we find that the evidence in the record does not preponderate against the trial court's finding that Peititioner's appellate counsel rendered effective assistance of counsel or that Petitioner failed to show that he was prejudiced as a result of his appellate counsel's failure to challenge the sufficiency of the evidence on appeal for the convictions other than the robbery of Ms. Gugler. Petitioner initially argues that the decision as to which issues to appeal was not his appellate counsel's responsibility but his. Contrary to this belief, however, "the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel." *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993). There is no constitutional requirement that appellate counsel argue every conceivable issue. *Campbell v. State*, 904 S.W.2d 594, 597 (Tenn. 1995). The determination of which issues to raise on appeal is a tactical or strategic choice. *Id.*

Mr. DeVasher, Petitioner's appellate counsel, testified at the post-conviction hearing that he believed that the only chance of a successful sufficiency of the evidence argument on appeal

involved the State's evidence supporting Petitioner's conviction of robbery against Ms. Gugler. Mr. DeVasher based this decision on his review of the trial record in light of the standard of review utilized by appellate courts.

In support of his argument that the State failed to prove he was the perpetrator or that he committed the offenses as charged, Petitioner relies on selected portions of his trial counsel's cross-examination of the State's witnesses. We observe, however, that counsel's cross-examination of the victims was indeed thorough at trial. Ms. Dykes and Mr. Dean, for example, explored at length the quality of the victims' identification of Petitioner as the perpetrator, the fact that Ms. Gugler initially told the police that she had been raped five times as opposed to fourteen, and Ms. Dobson's initial confusion in her first statement to the police over whether digital penetration legally constituted rape. Any weaknesses or flaws in their testimony, however, bears upon the credibility of the victims' testimony. Issues involving credibility and the weight to be assigned to a witness's testimony are left to the trier of fact.

Ms. Doty identified Petitioner as her assailant first in a physical lineup and then at trial for counts one through five. Ms. Cockerville, as the victim of counts eight through ten, also identified Petitioner as her assailant in a pre-trial lineup and at trial.

Counts twenty-seven through thirty involved the attack on Ms. Haygis. Although Ms. Haygis could not identify her assailant, Ms. Horne, Ms. Haygis' next-door neighbor, identified Petitioner as the man who attempted to enter her apartment a week before Ms. Haygis' attack. Ms. Graham, another resident of Ms. Haygis' apartment complex, identified Petitioner as the man she had seen on five separate occasions on the grounds of Ms. Haygis' apartment complex, including one occasion when the man was looking in Ms. Haygis' window. The license plate number of the man's car matched the license plate number of Petitioner's car. A German and a Columbian coin found in Petitioner's car matched the coins kept by Ms. Haygis in her bedside table. The semen sample discovered in a vaginal swab of Ms. Haygis represented approximately nine percent of the population of which Petitioner was a member. The State may prove its case entirely through circumstantial evidence where the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone." *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993).

Ms. Gugler testified that Petitioner penetrated her fourteen times during her ordeal while Ms. Dobson testified that Petitioner digitally penetrated her one time. Although Petitioner believes their testimony should not be accredited because of prior inconsistent statements, the assessment of the witnesses' credibility was within the purview of the jury. By its verdict, the jury obviously accredited the victim's testimony. The evidence in the record does not preponderate against the trial court's finding that an appeal as to the sufficiency of the convicting evidence would have caused a different, more favorable result. Petitioner is not entitled to relief on this issue.

G. Failure to Object to the Introduction of Testimony

Petitioner argues that his trial counsel was ineffective for failing to object to the prosecution's knowing use of "false" testimony. These allegations concern prior inconsistent statements made by two of the victims. Apparently, Petitioner equates "inconsistent" with "false" and believes that the prosecution in this case should not have been permitted to introduce any testimony at trial that contradicted the witnesses' first statements to the police. Initially, Ms. Dobson told the police that Petitioner had not penetrated her vagina with his finger. At trial, Ms. Dobson explained that she believed the definition of "penetration" included only penetration by the assailant's entire finger or by his penis. She learned after her statement that even a slight penetration such as that accomplished by Petitioner met the legal definition of "penetration".

Ms. Gugler initially told the police that Petitioner had sexually penetrated her five times while at trial she testified to fourteen separate penetrations. In her direct testimony, however, Ms. Gugler clearly identified fourteen separate occasions of sexual penetration as defined in Tennessee Code Annotated section 39-13-501(7).

Contrary to Petitioner's allegations, the victims' prior inconsistent statements in this instance benefited Petitioner's defense and were used by Petitioner's counsel to impeach the credibility of the witnesses. Tenn. R. Evid. 613. Cross-examination is a crucial component of our adversarial system designed for the purpose of testing the accuracy and veracity of the witness's recollection. *Ohio v. Roberts*, 448 U.S. 56, 71, 100 S. Ct. 2531, 2534, 65 L. Ed. 2d 597 (1980). The credibility of the victims' testimony was properly left to the trier of fact. The evidence in the record does not preponderate against the trial court's finding that Petitioner's trial counsel rendered effective assistance with regard to the examination of the victims at trial or that Petitioner was prejudiced when his trial counsel failed to preserve for appeal any issues regarding the victim's testimony. Petitioner is not entitled to relief on this issue.

Petitioner also contends that his trial counsel rendered ineffective assistance of counsel when they failed to object at trial to certain inconsistencies in Officer William Merrill's testimony concerning the description of the perpetrator's shirt found in Ms. Dobson's apartment and failed to preserve the issue for appeal. Petitioner, however, failed to present any evidence at the post-conviction hearing, or to argue this allegation as an issue before the post-conviction court. The issue, therefore, is waived. *See* Tenn. R. App. P. 36(a).

H. Failure to Preserve the Trial Court's Failure to Charge Lesser-included Offenses for Appeal

Petitioner argues that the conduct of his trial counsel was deficient because counsel did not preserve for appeal the trial court's failure to charge lesser-included offenses. The issue was not included in Petitioner's motion for a new trial. The trial court charged aggravated sexual battery as a lesser-included offense of the aggravated rape of Ms. Dobson in Count seven because the evidence presented at least an arguable position as to this offense. As to all other counts, the trial court found no evidence to support an instruction as to lesser-included offenses. Petitioner did not contend that the offenses did not occur. He merely argued that he was not the individual who committed the offenses.

Mr. Dean testified that he did not remember if there was a specific issue as to which lesser-included offenses should be charged for each count of the indictment and could not comment on whether or not Petitioner was prejudiced by the failure to charge lesser-included offenses.

Petitioner was charged with rape in counts two through five, twelve through twenty-five, and twenty-eight through thirty in the indictment. Petitioner argues that for these counts the trial court should have instructed the jury as to the lesser-included offenses of assault with intent to commit a felony, attempt to commit rape, assault and battery, and simple assault. Petitioner was charged with aggravated rape in count seven. Although the trial court charged the jury with the lesser-included offense of aggravated sexual battery for this count, Petitioner argues that the trial court's charge should have also included aggravated battery as a lesser-included offense of aggravated sexual battery. Finally, for count ten, assault with intent to commit rape, Petitioner contends that the trial court should have charged the jury as to the lesser-included offense of assault.

In determining whether the conduct of Petitioner's trial counsel was deficient for failing to request an instruction as to lesser-included offenses for all counts, we must examine counsel's conduct in view of the law in effect at the time Petitioner was tried. If a defendant was charged with a felony wherein two or more grades or classes of the offense may be included within the indictment, the trial judge, at the time of Petitioner's trial, was required to instruct the jury as to the law of each offense included in the indictment. Tenn. Code Ann. § 48-18-110 (1990). At the time of Petitioner's trial, "where the record clearly [showed, however], that the defendant was guilty of the greater offense and [was] devoid of any evidence permitting an inference of guilt of the lesser offense, it [was] not error to fail to charge on a lesser offense." *State v. Boyd*, 797 S.W.2d 589, 593 (Tenn. 1990), citing *State v. King*, 718 S.W.2d 241, 245 (Tenn. 1986), *superceded by statute as stated in State v. Hutchison*, 898 S.W.2d 161, 173 n.11 (Tenn. 1994). The practice of charging lesser included offenses where there is no evidence to support them was not favored. *State v. Mellons*, 557 S.W.2d 497, 499 (Tenn. 1977); *Whitwell v. State*, 520 S.W.2d 338, 344 (Tenn. 1975).

At trial, Petitioner did not testify and did not offer any evidence to contradict the State's evidence. Rather, Petitioner's defense rested on his contention that he was not the perpetrator of any of the charged offenses. At the time of Petitioner's trial, if the evidence supported a conviction of the greater offense or no offense at all, it was not error to refuse to instruct as to the lesser-included offenses. *Moorman v. State*, 577 S.W.2d 473, 475 (Tenn. Crim. App. 1978) (quoting *O'Neil v. State*, 2 Tenn. Crim. App. 518, 533, 455 S.W.2d 597, 604 (1970)). There was no evidence at trial that Petitioner was guilty only of the lesser-included offenses of the charged offenses. Under the law as in effect at the time of Petitioner's trial, the trial court did not commit reversible error in refusing to instruct the jury as to the lesser-included offenses. The evidence in the record does not preponderate against the trial court's finding that Petitioner's trial counsel were not ineffective in failing to assign this as an issue on appeal to this Court. Petitioner is not entitled to relief on this issue.

### I. Failure to Object to the Introduction of the Coins into Evidence

Petitioner next contends that trial counsel rendered ineffective assistance of counsel when they failed to preserve Petitioner's right to appeal the prosecution's introduction of what Petitioner again characterizes as "false evidence" at his trial. Petitioner contends that his counsel should have objected to the introduction at trial of the German and Columbian coins taken from Petitioner's car which matched those contained in Ms. Haygis' apartment. Petitioner argues that because he was not charged with stealing the coins, the coins themselves could not be used as evidence against him. He cites *Peek v. State*, 21 Tenn. (2 Hum.) 78, 1840 WL 1534 (1840) in support of this proposition.

Mr. Dean testified that he did not object to the introduction of the coins at trial nor did he raise any issues concerning this evidence in Petitioner's motion for a new trial. Mr. Dean said that the coins were not "false" evidence as characterized by Petitioner but circumstantial evidence properly brought before the jury.

*Peek* was decided well before the adoption of the Tennessee Rules of Evidence. Nonetheless, the supreme court's decision in *Peek* does not support Petitioner's argument. The court concluded that evidence that the defendant committed a crime similar to the one charged is admissible to establish identity, but warned that the State's proof must do more than merely show a suspicion that the defendant had committed the prior offense. *Peek,* 1840 WL 1534, at *6; *see also Webster v. State*, 425 S.W.2d 799, 806 (Tenn. Crim. App. 1968).

As more pertinent to Petitioner's case, evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Evidence of other crimes, wrongs or acts may be admissible if introduced to prove a material issue other than showing that the defendant acted in conformity with a particular character trait. *Id.* 404(b). Such material issues include the defendant's identity. *State v. Parton,* 694 S.W.2d 299, 302 (Tenn. 1985). The jury decides the weight to be given to circumstantial evidence and the inferences to be drawn from such evidence. *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958). Petitioner does not deny that the coins were in his car or that the coins matched those kept by Ms. Haygis in her bedside table. Furthermore, Petitioner clearly put his identity as the perpetrator of the offenses at issue in the trial. We cannot conclude from the record that the danger of unfair prejudice outweighed the probative value of the evidence. The evidence in the record does not preponderate against the trial court's finding that Petitioner's trial counsel rendered effective assistance of counsel at trial and that Petitioner did not show that he was prejudiced by his trial counsel's failure to object to the introduction of the coins into evidence. Petitioner is not entitled to relief on this issue.

### J. Introduction of Petitioner's 1982 Photograph

Petitioner next alleges that his trial counsel was ineffective for not objecting to the introduction into evidence of the photographic line-ups shown to Ms. Graham and Ms. Gugler which contained Petitioner's photograph from 1982. Petitioner argues that this picture constituted evidence

of a prior crime subject to the protective procedures of Rule 404(b) of the Tennessee Rules of Evidence.

Both Ms. Dykes and Mr. Dean testified at the post-conviction hearing that they did not remember whether or not they objected to the introduction of the photograph, and Ms. Dykes said that she did not remember where the State obtained the photograph.

The context within which the photograph was introduced is explained in Sergeant Lucy Dibella's trial testimony. Sergeant Dibella testified that Ms. Gugler and Ms. Graham were shown a photographic lineup on May 7, 1990 which contained Petitioner's 1982 photograph. Neither woman was able to make an identification from that lineup. Without objection, the photographic lineup containing Petitioner's 1982 photograph was made an exhibit to Sergeant Dibella's testimony. Sergeant Dibella further testified that Ms. Graham was shown a second photographic lineup that contained Petitioner's 1990 photograph, and this time she tentatively identified Petitioner as the man she had seen around Ms. Haygis' apartment complex shortly before Ms. Haygis' attack. Both Ms. Graham and Ms. Gugler were also able to make a positive identification of Petitioner from a physical lineup. Sergeant Dibella said that she had not seen a picture of Petitioner prior to his arrest other than the 1982 photograph. After Petitioner was arrested, Sergeant Dibella had a chance to observe him. She testified that she was surprised by his appearance and would not have been able to identify Petitioner from the 1982 photograph.

Petitioner clearly placed his identity as the perpetrator of the offenses at issue during the trial. The admissibility of photographs is a matter left to the sound discretion of the trial court, whose ruling will not be disturbed on appeal absent a clear abuse of discretion. *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). Petitioner argues that his photograph represented evidence of prior criminal acts. Even assuming that the photograph included Petitioner's booking information, however, a photograph showing that a defendant has been arrested, by itself, is not sufficient to create an inference of prior criminal activity. *See State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983). Nonetheless, the photographs must be relevant to an issue at trial, and the danger of unfair prejudice must not substantially outweigh their probative value. Tenn. R. Evid. 403; *Banks*, 564 S.W.2d at 951. "[T]he admissibility of identification evidence based on photographs depends on the totality of the circumstances." *Cross v. State*, 540 S.W.2d 289, 290 (Tenn. Crim. App. 1976).

The State must prove that the accused committed the offense beyond a reasonable doubt. *See White v. State*, 533 S.W.2d 735, 744 (Tenn. Crim. App. 1975). Two of the witnesses were initially shown an eight-year-old picture of Petitioner. Neither woman could identify Petitioner as the perpetrator until they were able to view Petitioner as he looked at the time of the offenses. When a defendant's physical appearance has changed, it is permissible to show the witness a photograph of the defendant at the time the offenses were committed. *See Cross*, 540 S.W.2d at 290. The introduction of Petitioner's 1982 photograph was relevant to the State's explanation as to why Ms. Gugler and Ms. Graham initially failed to identify Petitioner as the assailant.

The evidence in the record does not preponderate against the trial court's finding that Petitioner failed to show that he was prejudiced by his trial counsel's failure to object to the introduction of the 1982 photograph or to raise an issue as to the admissibility of the photograph in the motion for a new trial. Petitioner is not entitled to relief on this issue.

### K. Failure to Appeal Introduction of Evidence of Prior Bad Acts

Petitioner next contends that his appellate counsel was deficient for not appealing the trial court's admission of certain evidence regarding an attempted burglary involving Ms. Horn, Ms. Haygis' next-door neighbor, shortly before the crimes against Ms. Haygis. At the post-conviction hearing, Mr. DeVasher simply stated that he did not raise the issue. We cannot tell from the record whether or not the trial court held a jury out hearing pursuant to Rule 404(b) or the basis for the trial court's admission of the evidence. In the motion for a new trial, Petitioner objected to the evidence because he was not clearly identified as the perpetrator of this offense. Ms. Horne, however, testified at trial that she was startled by a man attempting to climb into her window and identified Petitioner as that man. Evidence of other crimes, wrongs or acts may be admissible to show the defendant's intent or motive, the defendant's identity, or the existence of a continuing plan, scheme or conspiracy of which the charged offense is a component. *State v. Parton*, 694 S.W.2d 299, 302 (Tenn. 1985) (citations omitted). Clearly, Petitioner put his identity as Ms. Haygis' assailant at issue in the trial. The evidence does not preponderate against the trial court's finding that Petitioner failed to show that he was prejudiced by Mr. DeVasher's decision not to appeal the admissibility of this evidence or that Mr. DeVasher's conduct was deficient in this regard. Petitioner is not entitled to relief on this issue.

### L. Failure to Challenge Prior Guilty Plea

Prior to his current convictions, Petitioner was indicted in Shelby County on fourteen counts of various charges of sexual offenses, robbery and burglary. Petitioner pled guilty to these charges in 1982 and was sentenced to ten years imprisonment. He was paroled in 1987. In determining Petitioner's sentences for the current offenses, the trial court considered Petitioner's prior convictions. *See Edwards*, 868 S.W.2d at 700-05.

Petitioner contends that the failure of his trial counsel to challenge the validity of his 1982 guilty pleas during his sentencing hearing for the current offenses constituted ineffective assistance of counsel. We find Petitioner's allegation to be without merit. If Petitioner believed that his 1982 guilty pleas were not entered into knowingly and voluntarily, his avenue of relief was through the filing of a petition for post-conviction relief in the Shelby County Criminal Court where Petitioner was convicted of these offenses. Tenn. Code Ann. § 40-30-103 (repealed 1995) Consequently, the Davidson County Criminal Court did not have jurisdiction to consider Petitioner's collateral attack on the validity of his 1982 guilty please even had Petitioner's trial counsel raised such issues.

Moreover, the filing of a post-conviction petition concerning Petitioner's 1982 guilty plea agreements was time barred. Prior to 1986, the Post-Conviction Procedures Act did not contain a time constraint for the filing of a petition for post-conviction relief. Tenn. Code Ann. § 40-30-102.

In 1986, the legislature amended the Post-Conviction Procedures Act by creating a three-year statute of limitations, effective July 1, 1986. 1986 Tenn. Pub. Acts 634. A person whose judgment became final prior to July 1, 1986 had three years from that date within which to file his or her petitioner for post-conviction relief, or until July 1, 1989. *Passarella v. State*, 891 S.W.2d 619, 624 (Tenn. Crim. App. 1994). Petitioner apparently did not take advantage of this procedural mechanism to challenge the validity of his 1982 guilty pleas. Petitioner's ability to seek post-conviction relief as to his 1982 convictions was time barred at the time the criminal charges in Davidson County were pending. Petitioner is not entitled to relief on this issue.

## III. Petitioner Did Not Receive a Full and Fair Hearing

Petitioner contends that he was not extended a full and fair hearing on his post-convictions claims. Specifically, Petitioner states that his investigator, R. L. Smith, had spoken with Sergeant Arnold, Ms. Dobson and Ms. Cockerville and that all three were willing to testify at the post-conviction hearing that they had each been "coached" by the State prior to testifying at Petitioner's trial. Petitioner alleges that he was prevented from issuing subpoenas to these witnesses by Mr. Walwyn, Petitioner's elbow counsel, who purportedly told Petitioner that the subpoenas were not necessary. Petitioner also complains that he was not able to fully develop his issues during the second day of his post-conviction hearing because Mr. Walwyn kept interrupting him. Finally, Petitioner contends that the court reporter purposefully altered the post-conviction trial transcript to Petitioner's detriment.

Due process requires that petitioners be provided "an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992). Based upon our review of the record, it is clear that Petitioner was extended an ample opportunity to present his arguments and evidence in the evidentiary hearing. *See House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995). In fact, the trial court continued Petitioner's hearing to allow him time to compile a list of issues that were not covered during the first day of the hearing. These issues were later covered during a second day of testimony, and the trial court gave full and fair consideration to Petitioner's issues. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we find that the evidence in the record does not preponderate against the trial court's findings that Petitioner's trial and appellate counsel rendered effective assistance of counsel and that Petitioner failed to show that there is a reasonable probability that the result of Petitioner's trial and appeal would have been different without the alleged deficiencies. We affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE