**STATE of Tennessee, Appellee,**

v.

**Terry Lynn KING, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

July 28, 1986.

Rehearing Denied Oct. 27, 1986.

Robert R. Simpson, Tipton, Eshbaugh and Simpson, Knoxville, for appellant.

Gordon W. Smith, Asst. Atty. Gen., W.J. Michael Cody, Atty. Gen. and Reporter, Nashville, for appellee.

## OPINION

COOPER, Justice.

This is a direct appeal of a death penalty sentence. Defendant, Terry Lynn King, was convicted of murder in the first degree while in the perpetration of a simple kidnapping by confinement, and armed robbery.[1] He was sentenced to death by electrocution on the felony murder conviction, and to serve a term of 125 years on the armed robbery conviction. He challenges both convictions and sentences on several grounds, including rulings by the trial court on preliminary motions, voir dire, the admission of evidence, objections to arguments of counsel, and the court's instructions to the jury. Defendant also insists that the Tennessee Death Penalty Act,

T.C.A. § 39–2–203 is unconstitutional. On consideration of the issues raised by appellant and after a review of the entire record, we are of the opinion that no reversible error was committed in either the convicting or sentencing phase of the trial, that the verdicts and sentences are sustained by the evidence, and, particularly, that the sentence of death under the circumstances of these convictions is in no way arbitrary or disproportionate. We therefore affirm the convictions, and the sentence of death.

The victim of both crimes for which defendant stands convicted was Diana K. Smith. Mrs. Smith left her home on Sunday afternoon, July 31, 1983, to go to a nearby McDonald's to get food for her family. Her automobile, a 1979 Camaro, was found on August 4, 1983, off the road in a heavily wooded area near Blaine, Tennessee.

On August 6, 1983, Mrs. Donna Allen went to the Asbury quarry in Knox County to swim. She noticed a strange odor coming from a yellow tarpaulin in the water near the bank, and reported the circumstance to the sheriff's office. On following-up Mrs. Allen's report, officers found the body of a white female in an advanced state of decomposition. The body was later identified as being that of Mrs. Smith. Death was from one or more shots fired into the back of Mrs. Smith's head from a high-powered weapon.

In the course of the police investigation, the attention of the officers was focused on Terry King and Randall Sexton when Jerry Childers, an acquaintance of King, reported a conversation he had had with King and what he had found when he followed up on the conversation.

Jerry Childers testified that Terry King came to his house on the afternoon of Monday, August 1, 1983, and inquired as to whether Childers knew anyone that wanted to buy parts from a 1979 Camaro. According to Childers, King told Childers he had

---

**1.** Co-defendant Randall Sexton also was convicted of the same offenses, receiving a life sentence on the felony murder conviction and a term of 125 years in the state penitentiary for armed robbery. Sexton's appeal is not now before this court.

killed the woman who owned the automobile after she threatened to charge defendant with rape. According to Childers, defendant said he made the woman get out of the car trunk where he had confined her and lie face down on the ground, that the woman faced the defendant and begged him not to shoot her and offered money, and that he ordered her to turn her head away from him. When she did, he shot her in the back of the head. Defendant also told Childers he took forty dollars from the woman as well as taking her automobile.

The following Friday, which was August 5, 1983, Childers related defendant's story to Mr. Buford Watson. On Sunday, Childers went to the location defendant had described as the place of the killing and found something with hair on it. Childers then gave the information he had to Detective Herman Johnson of the Knox County Sheriff's Department and T.B.I. agent, David Davenport. In following up the report, the officers met Childers near Richland Creek and searched the area, finding pieces of bone, hair, and bloodstains. A later more thorough search turned up bullet fragments and additional bone fragments.

In the course of the police investigation, defendant and co-defendant, Sexton, were interviewed by the officers. Both gave written statements detailing the events of the night of July 31, 1983. Neither defendant testified in the guilt phase of the trial, but their statements were introduced in evidence. Both defendants testified in the sentencing phase of the trial and repeated in substance the facts set forth in the statements given the police officers in their statements.

The statements of King and Sexton were markedly similar for the time the two men were together. King's statement was the more comprehensive since it covered the entire period of time he was with Mrs. Smith. According to defendant, he and his cousin, Don King, picked up Mrs. Smith at the Cherokee Dam on Sunday, July 31, 1983. Defendant drove Mrs. Smith in her automobile to the nearby house trailer of his cousin, arriving there around 7:00 p.m.

Don King drove his own automobile to the trailer. Shortly after arriving at the trailer, defendant called Eugene Thornhill who came to the trailer and left with defendant to obtain LSD and quaaludes. Defendant said he and Mrs. Smith took the drugs. Thereafter, defendant, Don King, and Eugene Thornhill had sex with Mrs. Smith.

After staying at the trailer for several hours, defendant and Mrs. Smith left in her automobile, with defendant driving. They went to a wooded area, where they again had sex. From there, they went to a service station for gas. Mrs. Smith got out of the automobile and grabbed the keys. Defendant told her to get back in the automobile and she did so. The defendant drove Mrs. Smith back to the wooded area, where they again had sex and the defendant took forty dollars from Mrs. Smith. According to defendant, Mrs. Smith then asked "why did you all rape me?" Defendant stated that he knew then what he was going to do. He told Mrs. Smith to get into the trunk of the automobile. When she did, defendant drove to Sexton's house and told Sexton he had a woman in the trunk of the automobile and needed Sexton's help. Defendant got a rifle from Sexton and also a shovel. Defendant and Sexton then left the Sexton home in separate automobiles. After making a stop at a Publix station to purchase gas, defendant and Sexton drove to a wooded area near Richland Creek in Knox County. Defendant drove the 1979 Camaro off the road and became stuck. He then made Mrs. Smith get out of the automobile trunk and pointed the loaded rifle at her. Defendant made Mrs. Smith lie down on the ground, assuring her that he was not going to kill her, that others were coming to have sex with her. Sexton left in his automobile to return a funnel to the gas station. While he was gone, defendant shot Mrs. Smith in the back of the head. On Sexton's return, and after getting the Camaro unstuck, the two went through Mrs. Smith's effects, burning her identification. They then attempted to bury the body, but gave up because of the hardness of the ground. The next morning, defendant and Sexton wrapped Mrs.

Smith's body in a tent, weighted it with cinder blocks and dumped it in the Asburn quarry. Mrs. Smith's automobile was hidden near Sexton's house.

Agent Davenport testified that after making his statement, the defendant took him and other officers to the place where the Camaro was hidden and defendant also showed them where he had hidden the automobile license plate in a hollow tree. The defendant also showed the officers where he had placed the body in the quarry and where the shooting occurred.

Tommy Heflin, a firearms examiner for the Tennessee Bureau of Investigation, testified that he had examined the .30 Marlin rifle belonging to Sexton, the metal bullet jacket, and fragments recovered from the scene of the killing. According to Mr. Heflin, the intact metal jacket had been fired from Sexton's rifle and the fragments were fired from a rifle with the same rifling characteristics as Sexton's rifle. Mr. Heflin was of the opinion that at least two bullets had been fired.

Dr. Joseph Parker, who performed an autopsy on the body of Mrs. Smith, testified that death was due to an extensive head injury consistent with gunshot wounds from a high-powered rifle.

Over objection, the State also presented evidence through Lori Eastman Carter that defendant had attempted to kill her on October 13, 1982. According to Mrs. Carter, King hit her with a slapstick numerous times, while repeatedly asking her "how it felt to be dying, so that the next woman he killed he would know how she felt." Mrs. Carter testified that she lost consciousness. When she came to, she was still in her automobile with her hair rolled up in the window. She further testified that she heard defendant tell his cousin that he had killed her and wanted James King to help him put her in a quarry and burn her automobile.

James King disputed Mrs. Carter's version of events, saying that defendant came to King's home to get him to follow defendant to St. Mary's Hospital as Mrs. Carter was ill and needed treatment.

Karen Greeg, Lori Carter's sister, testified that Mrs. Carter can not be believed, even under oath.

The defendant offered no other evidence in the guilt phase of the trial.

■ On considering the evidence, the jury found that the defendant and Randall Sexton were guilty of murder in the first degree in killing Diana K. Smith in the perpetration of a simple kidnapping by confinement and of armed robbery. In our opinion the evidence is overwhelming and supports the jury's verdict.

Counsel for the defendant has called attention of the court to the fact that the trial judge in instructing the jury did not include a charge on murder in the second degree, nor did he include a charge on voluntary or involuntary manslaughter. Defendant insists this was error.

■ The record shows that defendant was indicted for both common law murder and two counts of felony murder, and all counts were submitted to the jury for decision. Anytime a court instructs a jury in a homicide case, he should instruct all lesser included offenses and in most instances it is error not to do so. But where the evidence clearly shows that defendant was guilty of the greater offense, it is not error to fail to charge on a lesser included offense. *State v. Mellons*, 557 S.W.2d 497 (Tenn.1977); *Johnson v. State*, 531 S.W.2d 558, 559 (Tenn.1975); *State v. Wright*, 618 S.W.2d 310, 315 (Tenn.Crim.App.1981). In this case the record of the guilt phase of the trial is devoid of any evidence which would permit an inference of guilt of second-degree murder or the other lesser included offenses. The State's proof of premeditation and deliberation, and the fact that the killing occurred during the commission of a felony, which includes the defendant's confessions to Childers and to the police, was uncontradicted. Consequently, we find no prejudicial error in the trial judge's refusal to instruct the jury on the elements of murder in the second degree.

Defendant also charges that the jury commenced its deliberations prior to the trial judge's instructions to the jury, and that this deprived defendant of a fair and impartial jury.

The record shows that before the case was submitted to the jury for decision the jurors requested to "see all paper evidence." From this, the defendant reasons that contrary to the trial judge's instructions, the jury had begun its deliberations without being instructed on the applicable law by the trial judge. We find no merit in this argument. As is pointed out in *Rushing v. State*, 565 S.W.2d 893, 895 (Tenn. Crim.App.1977) deliberation in the context of a jury function means that a "properly formed jury, comprised of the number of qualified persons required by law, are within the secrecy of the jury room, analyzing, discussing, and weighing the evidence which they have heard with a view to reaching a verdict based upon the law applicable to the facts of the case as they find them to be." The mere fact that the jurors agreed to request all paper evidence in our opinion does not show that the jurors were discussing, analyzing, and weighing the evidence with a view to reaching a verdict.

The defendant further insists that the trial court unduly restricted questions to be asked on *voir dire* and that this was error.

It is settled law in Tennessee that the trial judge has wide discretion in the examination of prospective jurors, and his action will not be disturbed unless there is an abuse of that discretion. *State v. Jefferson*, 529 S.W.2d 674, 682 (Tenn.1975). We find no abuse of discretion in this case. Counsel for defendant was given great latitude in examining prospective witnesses. The only questions excluded, and they on motion by the State, were: "Mrs. Kincer, if you had a vote right now, how would you vote?"; and the question asked of a group of prospective jurors "... [D]oes anyone have the opinion or think that if a sentence of life is meted out, that the defendant will not serve the rest of his natural life in prison?" In our opinion, the trial judge ruled correctly in excluding both questions.

Counsel was permitted to ask questions concerning the presumption of innocence, the burden of proof, and the like. But to ask a juror how he would vote would be improper as tending to exact a pledge from the juror. *See Chambers v. Bradley County*, 53 Tenn.App. 455, 384 S.W.2d 43 (1964). The question as to the duration of the life sentence also was improper as the after effect of a jury's verdict is not a proper consideration for the jury. *Houston v. State*, 593 S.W.2d 267, 278 (Tenn. 1980); *Farris v. State*, 535 S.W.2d 608, 614 (Tenn.1976). In any event, considering the wide latitude given defendant in *voir dire*, the exclusion of these two questions could not have had a prejudicial effect on the outcome of the trial.

Defendant also takes issue with the admission of the testimony of Lori Eastman Carter, insisting that it was not relevant to a contested issue. Evidence that a defendant has committed some other crime wholly independent of that for which he is being tried, even though it is a crime of the same character, usually is not admissible because it is irrelevant. *Bunch v. State*, 605 S.W.2d 227 (Tenn.1980); *Lee v. State*, 194 Tenn. 652, 254 S.W.2d 747 (1953); *Mays v. State*, 145 Tenn. 118, 238 S.W. 1096 (1921). However, if evidence that the defendant has committed a crime separate and distinct from the one on trial, is relevant to some matter actually in issue in the case on trial and if its probative value as evidence of such matter in issue is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted. *Bunch v. State*, 605 S.W.2d 227 (Tenn.1980).

The State insists, as found by the trial judge, that the evidence of the Lori Eastman Carter incident is relevant to the issues of premeditation, intent, motive, and malice. The relevance of the testimony to these issues is tenuous at best and it would have been better for the trial judge to have excluded the testimony in view of the strength of other evidence on these issues. However, in our opinion, the admission of

the evidence was harmless beyond a reasonable doubt and could not have affected in any way the results of the trial or the sentence imposed.

The defendant also insists that the trial court erred in failing to compel the State to disclose to the defense the criminal record of the witness, Jerry Childers. We see no error in the trial court's action, since the State has no duty, either under the Tennessee Rules of Criminal Procedure or by decisional law in this state, to provide such information to the defendant. *State v. Workman,* 667 S.W.2d 44, 51 (Tenn. 1984). Further, it should be pointed out that the defendant suffered no prejudice as the result of the court's ruling. The record reflects that the defense had this information regarding the 19 year old Georgia auto theft conviction.

The defendant insists that the trial judge erred in refusing to sever the defendants for trial and in admitting the confession of Randall Joe Sexton, a nontestifying co-defendant, citing *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed. 476 (1968).

The *Bruton* rule proscribes, generally, the use of one co-defendant's confession to implicate the other as being violative of the nonconfessing co-defendant's Sixth Amendment right of confrontation. However, *Bruton* is not violated when the defendant confesses and his confession "interlocks" in material aspects with the confession of the co-defendant. *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979). See also, *State v. Elliott,* 524 S.W.2d 473, 477–78 (Tenn.1975).

Recognizing these general statements of applicable law, defendant insists that the recitals in Sexton's statement that "Terry [the defendant] said he wasn't going to let her [the victim] go, because he was afraid he would get in the same mess he got into with Lori" and that the defendant told him he had "choked" the victim before placing her in the trunk of the car and later removed her from the trunk and shot her while she was begging for him not to did

not "interlock" with the defendant's confession to police.

It is true defendant's confession to the police did not recite these facts, but his statement to Jerry Childress, also admitted in the trial, cured any material deficiency of the confession to the police. Childress testified that the defendant told him he killed the girl because "he had been in jail before, and he wasn't going back to jail" and that he put the victim in the trunk of his car, later made her get out of the car and lie on the ground, and put the gun to her head and shot her after she begged him not to shoot and offered him money to let her go.

The inculpatory confessions of the defendant and co-defendant interlocking in the crucial facts of time, location, felonious activity, and awareness of the overall plan or scheme, we find no *Bruton* violation in the admission in evidence of the confessions. *See Parker v. Randolph, supra.* The confessions being admissible, it cannot be said that the trial court erred in failing to grant a severance of the defendants pursuant to Rule 14(c) of the Tennessee Rules of Criminal Procedure.

Finding no material error in the guilt phase of the trial, and being convinced that the evidence supports the jury's finding that defendant was guilty of murder in the first degree in killing Diana K. Smith during the perpetration of a simple kidnapping by confinement and of armed robbery, we affirm both convictions.

As to the sentencing phase of the trial, the State relied upon evidence introduced during the guilt phase. In addition, the State introduced evidence showing that the defendant and Sexton had been convicted previously of murder in the first degree by use of a firearm in perpetration of armed robbery and of aggravated kidnapping, both offenses being committed on July 2, 1983, less than a month before the defendants killed Mrs. Smith. The State also introduced evidence that the defendant had been convicted of an assault with intent to commit aggravated kidnapping, which was

committed only three days after the killing of Mrs. Smith.

In response, the defendant called numerous witnesses who testified that he had been a heavy user of drugs and alcohol for a number of years, and that their use could be expected to and did affect his judgment and actions. Further, there was expert medical proof that the effect of LSD and quaaludes, which defendant claimed to have taken on July 31, 1983, could be expected to continue for 8 to 12 hours after their ingestion. There was also evidence that defendant was remorseful, and that he had caused no disciplinary problems at the prison and had been moved from close security to medium security.

Both the defendant and Sexton took the witness stand in the sentencing proceeding, and their testimony substantially followed the statements they gave the police. The defendant did deny forming the intent to kill Mrs. Smith before he went to Sexton's house, insisting that he went there only for advise on what to do. He further testified that he got the rifle at Sexton's direction and formed the intent to kill Mrs. Smith after he took her to the place she was shot. Defendant stated he related the events of Mrs. Smith's death to Jerry Childers because it was bothering him. He denied telling Childers that Mrs. Smith begged for her life. On cross-examination, defendant admitted committing two armed robberies in January, 1980, when he was a juvenile.

Sexton testified generally in accord with the statement he had given the police. He denied having advised defendant to kill Mrs. Smith, but admitted that he gave defendant the weapon used in the murder and accompanied him to the death scene, knowing that Mrs. Smith was confined in the trunk of the automobile driven by the defendant. Sexton also helped in trying to dispose of the automobile, in destroying all Mrs. Smith's identification and in disposing of her body.

On considering this evidence, the jury returned the sentence of death against the defendant. Sexton was sentenced to life imprisonment, evidently because he was not present at the moment of the killing and did not shoot Mrs. Smith. In imposing the sentence of death on the defendant the jury expressly found that:

(1) the defendant was previously convicted of one or more felonies, other than the present charge, which involved the use of threat of violence to the person;

(2) the murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind;

(3) the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest of the defendant or another; and

(4) the murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any rape, robbery, larceny or kidnapping. *See* T.C.A. § 39–2–203(i)(2), (5), (6), and (7). The jury also found that there was no mitigating circumstance sufficiently substantial to outweigh the statutory aggravating circumstances found by the jury. T.C.A. § 39–2–203(g).

The defendant does not argue that the aggravating circumstances were not proven beyond a reasonable doubt, but does insist that the trial court erred in restricting argument by defense counsel and in failing to give requested instructions, both as to aggravating and mitigating circumstances. The defendant also insists that the trial court erred in permitting the State to show, on cross-examination, that defendant had committed two armed robberies in January, 1980, while a juvenile.

 The State now concedes that error was committed in examining defendant as to his actions as a juvenile, T.C.A. § 37–1–133(b); *State v. Dixon,* 656 S.W.2d 49, 51–52 (Tenn.Crim.App.1983). However, in our opinion the error was harmless. The evidence overwhelmingly established four statutory aggravating circumstances and that these circumstances were not outweighed by any substantial mitigating circumstances. While it is true that one of

the aggravating circumstances found was that the defendant was previously convicted of one or more felonies which involved the use or threat of violence to the person, the finding was not dependent on the evidence that the defendant had committed crimes while a juvenile. It is undisputed in the record that in addition to the murder of Mrs. Smith, the defendant had been convicted of murder in the first degree in the perpetration of an armed robbery, aggravated kidnapping, and an assault with intent to commit aggravated kidnapping. In view of this evidence, the error in admitting evidence of defendant's crimes as a juvenile could not be prejudicial. *See* Rule 36(b) of the Tennessee Rules of Appellate Procedure.

■■■ The defendant insists he was deprived of a fair trial by restrictions placed on argument of counsel by the trial court. The record shows that the trial court sustained objections of the State to argument directed to the history and morality of the death penalty. We see no error in the court's ruling. The defendant's argument was not predicated on any evidence adduced at either the guilt or penalty phase of the trial and was, consequently, irrelevant. More appropriately, it is an argument to be made to the legislature in deciding whether the death penalty is ever a justified punishment.

There are several issues directed to the instructions given by the trial court to the jury in the sentencing phase of the trial. In a special request, the defendant sought to have the trial court instruct the jury that fourteen different circumstances, not listed in the statute, were to be considered by the jury as mitigating circumstances. The trial judge refused to give the requested instruction, and defendant assigns the ruling as error.

■■■ In ruling on a similar issue in *State v. Hartman*, 699 S.W.2d 538, 550–51 (Tenn.1985), this court held that the only mandatory instructions with respect to mitigating circumstances are that those statutory circumstances which are raised by the evidence shall be expressly charged. The

jury must also be told that they shall weigh and consider any other fact or circumstance that is in mitigation, in making the determination of which circumstances, aggravating or mitigating, outweigh the other. The trial judge's instructions complied with this directive.

■■■ The defendant also insists that the trial court erred in failing to define for the jury the terms "to aggravate" and "torture," as requested by defendant. We see no error in the failure of the trial court to specifically define "to aggravate." It is a term in common use and not a legalism beyond the understanding of the jurors. *See State v. Groseclose*, 615 S.W.2d 142, 147–48 (Tenn.1981) ("Mitigating"). Neither do we find any prejudicial error in the trial court's failure to define the term "torture." The evidence in this case supports the aggravating circumstance, Tenn.Code Ann. § 39-2-203(i)(5), as defined in *State v. Williams*, 690 S.W.2d 517, 532–33 (Tenn.1985), as the defendant shot the victim in the head after she begged for her life and offered the defendant money to let her go. Furthermore, the remaining three aggravating circumstances were correctly charged and are overwhelmingly supported by the evidence. Under these circumstances, there was no prejudice to the defendant by the failure to define "torture." *State v. Duncan*, 698 S.W.2d 63, 70–71 (Tenn.1985).

■■■ The defendant further contends that the trial court erred in instructing the jury on the possible punishment of death or life imprisonment that, "Your verdict must be unanimous as to either form of punishment." He argues that this instruction violates T.C.A. § 39-2-203(h), which provides that if the jury cannot ultimately agree as to punishment the judge shall impose a life sentence. We see no basic error in the trial judge's instruction, which was verbatim the Tennessee Pattern Jury Instruction, T.P.I.—Crim. 20.03, formulated for use at the sentencing hearing in a capital case. There is no way a jury can impose a sentence if it is not unanimous in its decision. Where the jury is unable to

agree as to punishment, in a sentencing hearing of a first degree murder conviction, the judge is instructed to dismiss the jury and impose a sentence of life imprisonment. T.C.A. § 39–2–203(h). The statute also directs that "[t]he judge shall not instruct the jury, nor shall the attorneys be permitted to comment at any time to the jury, on the effect of the jury's failure to agree on a punishment."

Finally, the defendant contends that the trial court erred in instructing the jury, on the aggravating circumstances set forth in T.C.A. § 39–2–203(i)(7), as follows:

> The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit any first degree murder, arson, rape, robbery, larceny, kidnapping....

Specifically, defendant contends that the offenses of rape and larceny should not have been included as there was no proof justifying their inclusion. The argument overlooks the fact that in the defendant's confession, he stated that the victim had accused him of raping her, and that he had taken a gold cigarette lighter belonging to Mrs. Smith during the criminal episode. These facts would justify the submission of the instruction in the complete form used by the trial judge. Further, their inclusion could not have materially affected the jury's finding on the issue in view of the overwhelming proof of murder in the first degree in the perpetration of a simple kidnapping and armed robbery.

Defendant also raises the question of the constitutionality of the Tennessee Death Penalty Act, evidently as a cautionary action as he does not discuss the issue in any detail in his brief. On reference to the motion which is the predicate of the assignment, we find that defendant raised no issue, nor advanced any argument that has not been considered and overruled in several prior cases. *See e.g., State v. Austin,* 618 S.W.2d 738 (Tenn.1981).

The defendant's conviction of murder in the first degree in the perpetration of a

simple kidnapping and sentence of death is affirmed. We also affirm the defendant's conviction of armed robbery and the sentence that he serve 125 years in the state penitentiary. The death sentence will be carried out on the 7th day of October, 1986, unless stayed by appropriate authority. Costs are adjudged against the defendant.

I am authorized to state that Mr. Chief Justice BROCK concurs in the affirmance of conviction but dissents from the imposition of the death penalty for the reasons expressed in his dissent in *State of Tennessee v. Dicks,* 615 S.W.2d 126, 132 (Tenn. 1981).

FONES, HARBISON and DROWOTA, JJ., concur.

BROCK, C.J., concurs and dissents.

## OPINION ON PETITION TO REHEAR

COOPER, Justice.

Defendant has filed a petition to rehear insisting that the court has erroneously ruled on several issues, or has failed to consider them. On considering the petition and the briefs originally filed, we find that all material issues were considered and, in our opinion, properly decided. One of the issues, based on the admission in evidence of fragments of the victim's skull, was not discussed in detail in our finding that no prejudicial error was committed in either the convicting or sentencing phase of the trial. As to this issue, the parties stipulated prior to trial that Mrs. Smith's death was the result of a shot in the back of the head from a high-powered rifle. The defendant argues that in light of the stipulation the introduction of the skull and skull fragments was improper because no relevant issue remained to be proven.

The record shows that the state introduced in evidence the skull fragments in lieu of a picture of the body of Mrs. Smith in its decomposed state. The examining pathologist, Dr. Bass, used the skull to indicate to the jury where the bullet entered. He also used fragments to dem-

onstrate that they contained lead splatters consistent with an injury from a bullet fired from a high-powered rifle at close range. Further, as pointed out by the state, the fragments could be of material assistance to the jury in visualizing the massive injury which caused Mrs. Smith's death and had some bearing on proving the element of deliberation and premeditation, an issue which the defendant would not concede. The evidence, being relevant to issues to be decided by the jury, was admissible in our opinion. *See State v. Morris,* 641 S.W.2d 883 (Tenn.1982). Being admissible, it was proper for the prosecution to call attention to the exhibit in his argument. And, if his comments were improper, considering the evidence in this case, they could not have affected the jury's verdict in either the guilt or sentencing phase of the trial.

Petition to Rehear denied, at the cost of the Appellant.

BROCK, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.