IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 23, 2020 Session

**TERRY LYNN KING v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 72987     G. Scott Green, Judge**

————————————————————

**No. E2019-00349-CCA-R3-PD**

————————————————————

The Petitioner, Terry Lynn King, through counsel, appeals from the post-conviction court's order summarily denying relief on his amended post-conviction petition challenging his 1985 death sentence for the first degree murder perpetrated in the simple kidnapping by confinement of Diana K. Smith. The Petitioner argues that (1) the prior violent felony aggravating circumstance applied in his case is unconstitutionally vague under Johnson v, United States, 576 U.S. 591 (2015); (2) the harmless error analysis utilized by the original post-conviction court and this court concerning the erroneous application of the felony murder aggravating circumstance is unconstitutional under Hurst v. Florida, 577 U.S. 92(2016); (3) the Petitioner is entitled to post-conviction relief on amended claims alleging that the State committed Brady violations at his original trial, that the use of his Grainger County conviction to establish the prior violent felony aggravating circumstance violated his constitutional rights, and that counsel committed ineffective assistance of counsel; (4) the post-conviction court's summary denial of the amended post-conviction petition violated the Petitioner's right to due process; and (5) the cumulative effect of the errors resulted in a deprivation of constitutional rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and ROBERT H. MONTGOMERY, JR., JJ., joined.

Joshua Hedrick and Cullen M. Wojcik, Knoxville, Tennessee, for the appellant, Terry Lynn King.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme Allen, District Attorney General; and Leland Price, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I.     Factual and Procedural Background

On February 1, 1985, a Knox County Criminal Court jury convicted the Petitioner of the July 31, 1983 first degree murder while in the perpetration of a simple kidnapping by confinement and armed robbery of Diana K. Smith.  At sentencing, the jury imposed the death penalty for the first degree murder conviction based upon the weight of four aggravating circumstances, and the trial court imposed a sentence of 125 years in confinement for the armed robbery conviction.  The Petitioner's convictions and sentences were affirmed on appeal.  State v. King, 718 S.W.2d 241 (Tenn. 1986).  The Petitioner unsuccessfully pursued post-conviction relief, the denial of which was affirmed by this court.  Terry Lynn King v. State, No. 03C01-9601-CR-00024, 1997 WL 416389 (Tenn. Crim. App. July 14, 1997), aff'd, 989 S.W.2d 319 (Tenn. 1999), cert. denied, 528 U.S. 875, 120 S. Ct. 181 (1999).  The Petitioner unsuccessfully pursued federal habeas corpus relief. Terry Lynn King v. Ricky Bell, No. 3:99-cv-454, 2011 WL 3566843 (E.D. Tenn. Aug. 12, 2011), aff'd, 847 F.3d 788 (6th Cir. 2017); see also King v. Dutton, 17 F.3d 151 (6th Cir. 1994) (challenging the Grainger County first degree murder conviction that served as a factual basis of the application of the prior violent felony aggravating circumstance), cert. denied, 512 U.S. 1222, 114 S. Ct. 2712 (1994).  In state court, the Petitioner unsuccessfully pursued a petition for a writ of error coram nobis, the denial of which was affirmed on appeal by this court.  Terry Lynn King v. State, No. E2014-01202-CCA-R3-ECN, 2015 WL 3409486 (Tenn. Crim. App. Feb. 19, 2015), perm. app. denied (Tenn. Sept. 16, 2015). The Petitioner filed his first motion to reopen his post-conviction petition, alleging that the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), invalidated his death sentence; the post-conviction court denied the motion to reopen, and this court denied the Petitioner's application for review.  Terry Lynn King v. State, No. E2003-00701-CCA-R28-PD (Order) (Tenn. Crim. App. July 8, 2003), perm. app. denied (Tenn. Nov. 24, 2003).

The evidence presented at the Petitioner's trial was summarized by the Tennessee Supreme Court on direct appeal:

The victim of both crimes for which defendant stands convicted was Diana K. Smith.  Mrs. Smith left her home on Sunday afternoon, July 31, 1983, to go to a nearby McDonald's to get food for her family.  Her

automobile, a 1979 Camaro, was found on August 4, 1983, off the road in a heavily wooded area near Blaine, Tennessee.

On August 6, 1983, Mrs. Donna Allen went to the Asbury quarry in Knox County to swim. She noticed a strange odor coming from a yellow tarpaulin in the water near the bank, and reported the circumstance to the sheriff's office. On following-up Mrs. Allen's report, officers found the body of a white female in an advanced state of decomposition. The body was later identified as being that of Mrs. Smith. Death was from one or more shots fired into the back of Mrs. Smith's head from a high-powered weapon.

In the course of the police investigation, the attention of the officers was focused on Terry King and Randall Sexton when Jerry Childers, an acquaintance of King, reported a conversation he had had with King and what he had found when he followed up on the conversation.

Jerry Childers testified that Terry King came to his house on the afternoon of Monday, August 1, 1983, and inquired as to whether Childers knew anyone that wanted to buy parts from a 1979 Camaro. According to Childers, King told Childers he had killed the woman who owned the automobile after she threatened to charge defendant with rape. According to Childers, defendant said he made the woman get out of the car trunk where he had confined her and lie face down on the ground, that the woman faced the defendant and begged him not to shoot her and offered money, and that he ordered her to turn her head away from him. When she did, he shot her in the back of the head. Defendant also told Childers he took forty dollars from the woman as well as taking her automobile.

The following Friday, which was August 5, 1983, Childers related defendant's story to Mr. Buford Watson. On Sunday, Childers went to the location defendant had described as the place of the killing and found something with hair on it. Childers then gave the information he had to Detective Herman Johnson of the Knox County Sheriff's Department and T.B.I. agent, David Davenport. In following up the report, the officers met Childers near Richland Creek and searched the area, finding pieces of bone, hair, and bloodstains. A later more thorough search turned up bullet fragments and additional bone fragments.

In the course of the police investigation, defendant and co-defendant, Sexton, were interviewed by the officers. Both gave written statements detailing the events of the night of July 31, 1983. Neither defendant testified

- 3 -

in the guilt phase of the trial, but their statements were introduced in evidence. Both defendants testified in the sentencing phase of the trial and repeated in substance the facts set forth in the statements given the police officers in their statements.

The statements of King and Sexton were markedly similar for the time the two men were together. King's statement was the more comprehensive since it covered the entire period of time he was with Mrs. Smith. According to defendant, he and his cousin, Don King, picked up Mrs. Smith at the Cherokee Dam on Sunday, July 31, 1983. Defendant drove Mrs. Smith in her automobile to the nearby house trailer of his cousin, arriving there around 7:00 p.m. Don King drove his own automobile to the trailer. Shortly after arriving at the trailer, defendant called Eugene Thornhill who came to the trailer and left with defendant to obtain LSD and quaaludes. Defendant said he and Mrs. Smith took the drugs. Thereafter, defendant, Don King, and Eugene Thornhill had sex with Mrs. Smith.

After staying at the trailer for several hours, defendant and Mrs. Smith left in her automobile, with defendant driving. They went to a wooded area, where they again had sex. From there, they went to a service station for gas. Mrs. Smith got out of the automobile and grabbed the keys. Defendant told her to get back in the automobile and she did so. The defendant drove Mrs. Smith back to the wooded area, where they again had sex and the defendant took forty dollars from Mrs. Smith. According to defendant, Mrs. Smith then asked "why did you all rape me?" Defendant stated that he knew then what he was going to do. He told Mrs. Smith to get into the trunk of the automobile. When she did, defendant drove to Sexton's house and told Sexton he had a woman in the trunk of the automobile and needed Sexton's help. Defendant got a rifle from Sexton and also a shovel. Defendant and Sexton then left the Sexton home in separate automobiles. After making a stop at a Publix station to purchase gas, defendant and Sexton drove to a wooded area near Richland Creek in Knox County. Defendant drove the 1979 Camaro off the road and became stuck. He then made Mrs. Smith get out of the automobile trunk and pointed the loaded rifle at her. Defendant made Mrs. Smith lie down on the ground, assuring her that he was not going to kill her, that others were coming to have sex with her. Sexton left in his automobile to return a funnel to the gas station. While he was gone, defendant shot Mrs. Smith in the back of the head. On Sexton's return, and after getting the Camaro unstuck, the two went through Mrs. Smith's effects, burning her identification. They then attempted to bury the body, but gave up because of the hardness of the ground. The next morning, defendant and

Sexton wrapped Mrs. Smith's body in a tent, weighted it with cinder blocks and dumped it in the Asbury quarry. Mrs. Smith's automobile was hidden near Sexton's house.

Agent Davenport testified that after making his statement, the defendant took him and other officers to the place where the Camaro was hidden and defendant also showed them where he had hidden the automobile license plate in a hollow tree. The defendant also showed the officers where he had placed the body in the quarry and where the shooting occurred.

Tommy Heflin, a firearms examiner for the Tennessee Bureau of Investigation, testified that he had examined the .30 Marlin rifle belonging to Sexton, the metal bullet jacket, and fragments recovered from the scene of the killing. According to Mr. Heflin, the intact metal jacket had been fired from Sexton's rifle and the fragments were fired from a rifle with the same rifling characteristics as Sexton's rifle. Mr. Heflin was of the opinion that at least two bullets had been fired.

Dr. Joseph Parker, who performed an autopsy on the body of Mrs. Smith, testified that death was due to an extensive head injury consistent with gunshot wounds from a high-powered rifle.

Over objection, the State also presented evidence through Lori Eastman Carter that defendant had attempted to kill her on October 13, 1982. According to Mrs. Carter, King hit her with a slapstick numerous times, while repeatedly asking her "how it felt to be dying, so that the next woman he killed he would know how she felt." Mrs. Carter testified that she lost consciousness. When she came to, she was still in her automobile with her hair rolled up in the window. She further testified that she heard defendant tell his cousin that he had killed her and wanted James King to help him put her in a quarry and burn her automobile.

James King disputed Mrs. Carter's version of events, saying that defendant came to King's home to get him to follow defendant to St. Mary's Hospital as Mrs. Carter was ill and needed treatment.

Karen Greeg, Lori Carter's sister, testified that Mrs. Carter cannot be believed, even under oath.

The defendant offered no other evidence in the guilt phase of the trial.

King, 718 S.W.2d at 243-45.

At the penalty phase of the trial, the jury imposed the death penalty based upon its finding of four aggravating circumstances: (1) that the Petitioner was previously convicted of one or more felonies, other than the present charge, which involved the use or threat of violence to the person,[1] Tenn. Code Ann. § 39-2-203(i)(2) (1982) (repealed); (2) that the murder was especially heinous, atrocious and cruel in that it involved torture or depravity of mind, Tenn. Code Ann. § 39-2-203(i)(5) (1982) (repealed); (3) the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest of the defendant or another, Tenn. Code Ann. § 39-2-203(i)(6) (1982) (repealed); and (4) the murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any rape, robbery, larceny or kidnapping, Tenn. Code Ann. § 39-2-203(i)(7) (1982) (repealed). King, 718 S.W.2d at 248. The trial court sentenced the Petitioner to one hundred and twenty-five years for the armed robbery conviction. Id. at 243.

On automatic appeal to the Tennessee Supreme Court, the court held that the evidence was sufficient to support the Petitioner's convictions; that the trial court did not err by refusing to instruct the jury on the lesser included offenses; that the jury did not prematurely begin deliberations in violation of the Petitioner's right to a fair and impartial jury; that the trial court did not unduly restrict voir dire concerning potential jurors' views on punishment; that the trial court did not err in admitting Lori Eastman Carter's testimony; that the trial court did not err in denying the Petitioner's motion to compel disclosure of Jerry Childers' criminal history; that the trial court did not err in denying the codefendants' motion to sever trial; that the trial court did not improperly limit argument or deny jury instruction requests at sentencing; and that the death penalty was imposed constitutionally. Id. at 245-50.

The Petitioner filed a timely petition for post-conviction relief. Following a hearing, the post-conviction court denied relief but found that the erroneous application of the felony murder aggravating circumstance was harmless. On appeal to this court, the Petitioner alleged that the aggravating factors supporting the death sentence were either constitutionally flawed or impermissibly tainted by inadmissible evidence; the trial court's failure to grant a severance at trial violated his constitutional rights, see Bruton v. United

---

[1] The Petitioner was convicted of the 1983 murder and aggravated kidnapping of Todd Millard in Grainger County, Tennessee. The Grainger County offenses occurred about one month before the offenses involving Ms. Smith. The Petitioner pleaded guilty to the Grainger County offenses while the Smith case was pending.

States, 391 U.S. 123 (1968) and Cruz v. New York, 481 U.S. 186 (1987); trial and appellate counsel committed ineffective assistance of counsel; the trial court's failure to instruct the jury on second degree murder and voluntary intoxication violated his constitutional rights; the trial court's instruction on reasonable doubt violated his due process rights; the prosecution violated his due process rights by offering inadmissible, irrelevant and inflammatory evidence during both the guilt and penalty phases of his trial; and he is entitled to a new trial and/or a new sentencing hearing based on cumulative error. Terry Lynn King, 1997 WL 416389 at *1. On appeal, this court affirmed the post-conviction court's denial of relief and also affirmed the post-conviction court's finding of harmlessness concerning the erroneous application of the felony murder aggravating circumstance. Id. The Tennessee Supreme Court granted permission to appeal specific to the felony murder aggravating circumstance, Bruton, and ineffective assistance of counsel issues and affirmed this court's opinion. King, 989 S.W.2d at 322.

The Petitioner then sought federal habeas corpus relief. As relevant to the claims presented in this appeal, the federal district court denied relief as to the Petitioner's allegations that the prior violent felony aggravating circumstance was unconstitutionally applied because the Grainger County offense upon which it was based was adjudicated after the Knox County offense, that he was denied counsel in Knox County in relation to his guilty pleas in the Grainger County prosecution, that counsel were ineffective in investigating and presenting mental health evidence, and that allegations of Brady violations relative to the single gunshot evidence and impeachment evidence concerning Lori Eastman Carter deprived him of a fair trial. Terry Lynn King v. Ricky Bell, Warden, 2011 WL 3566843 at *7-43. The Sixth Circuit granted a partial certificate of appealability and affirmed the district court's denial of relief. King v. Westbrooks, 847 F.3d at 791 (affirming denial of habeas relief alleging ineffective assistance concerning counsel's abandonment of intoxication defense and delay in hiring mental health experts).

On June 25, 2013, the Petitioner filed a petition for a writ of error coram nobis in state court alleging the same Brady violations that he had alleged in the federal habeas corpus litigation. The coram nobis court summarily denied relief, finding that the petition was untimely and that due process did not require a tolling of the statute of limitations. This court affirmed the coram nobis court's judgment on appeal. Terry Lynn King, 2015 WL 3409486 at *9.

**Motion to Reopen Post-Conviction Petition**

On June 22, 2016, the Petitioner filed a motion to reopen his post-conviction petition, alleging that the United States Supreme Court's decision in Johnson announced a new constitutional rule requiring retrospective application to reopen post-conviction proceedings that invalidated the application of the prior violent felony aggravating

circumstance in his case. *See* T.C.A. § 40-30-117(a)(1) (2018). The State filed a reply, arguing that the rule announced in Johnson is inapplicable to Tennessee's prior violent felony aggravating circumstance.

On September 26, 2016, the post-conviction court entered an order setting further hearing "limited to the issue of whether the petition states a colorable claim which warrants a finding that Mr. King's post-conviction should be reopened." *See* T.C.A. § 40-30-117(b) ("The motion shall be denied unless the factual allegations, if true, meet the requirements of subsection (a). If the court grants the motion, the procedural, relief and appellate provisions of this part shall apply."); *Id.* § 40-30-107 (requiring the post-conviction court to enter a preliminary order if the pleading "is not dismissed upon preliminary consideration").

On November 22, 2016, the Petitioner filed an amended claim that the Supreme Court's decision in Hurst mandated a new sentencing hearing because the harmless error analysis utilized when the felony murder aggravating circumstance was struck violated Hurst. On January 13, 2016, the State filed a response arguing that Hurst did not provide a basis to reopen the post-conviction petition because Hurst did not announce a new constitutional rule requiring retroactive application.

On April 3, 2017, the post-conviction court granted the motion to reopen as to the Johnson claim but denied the motion to reopen as to the Hurst claim. In the preliminary order, the post-conviction court directed the Petitioner to "investigate all possible constitutional grounds for relief for the purpose of filing an amended petition if necessary . . . [and] raise any additional issues counsel deems necessary."

On October 16, 2017, the Petitioner amended his post-conviction petition with the additional claims concerning Brady violations, denial of counsel to advise him concerning the collateral consequence of the Grainger County pleas, ineffective assistance of counsel, and, once again, a Hurst claim. On November 30, 2017, the State responded that the additional claims had been previously determined by other litigation and that the Hurst claim had already been denied as a basis for reopening by the post-conviction court. On July 16, 2018, the Petitioner filed a reply to the State's response, arguing that due process required a tolling of the statute of limitations to permit the amendment of the petition for post-conviction relief with later-arising claims. On July 26, 2018, the State filed a response to the reply, arguing that this court had decided that the Johnson claim is not applicable to Tennessee's statute and that, therefore, the post-conviction court had improvidently granted the motion to reopen. On October 30, 2018, the Petitioner filed a second amendment to the post-conviction petition, alleging that the prior violent felony aggravating circumstance was unconstitutional because the prior conviction had not been adjudicated at the time of the offense.

On November 1, 2018, the post-conviction court heard arguments on the motion to reopen and took the matter under advisement. On January 24, 2019, the post-conviction court entered an order denying relief. The court found that Johnson did not apply to Tennessee's prior violent felony aggravating circumstance and that the additional claims went beyond the scope of the court's April 3, 2017 preliminary order. The court further found that the additional claims were procedurally barred by the statute of limitations and/or the previous determination and waiver provisions of the Post-Conviction Procedure Act. See Tenn. Code Ann. §§ 40-30-102(a), -106(h), -106(f).

On appeal, the Petitioner argues that Tennessee's prior violent felony aggravating circumstance is unconstitutionally vague under Johnson. As an amended claim to the petition for post-conviction relief, the Petitioner argues that the re-weighing of aggravating circumstances and harmless error analysis employed by the appellate courts upon striking the felony murder aggravating circumstance violates Hurst. The Petitioner also argues that the State committed Brady violations related to the State's failure to disclose ballistics evidence that the victim was shot only once and impeachment evidence concerning Lori Eastman Carter, who testified for the State at trial. The Petitioner asserts that his Sixth Amendment right to counsel, Eighth Amendment right to be free from cruel and unusual punishment, and due process rights were violated by circumstances related to the use of the Grainger County murder conviction as a factual predicate to the prior violent felony aggravating circumstance. As part of the amended claims, the Petitioner also claims that counsel committed ineffective assistance by failing to investigate and present evidence of the Petitioner's organic brain damage. The Petitioner argues that the post-conviction court's summary denial of his amended claims violates his due process right to have all colorable claims heard and adjudicated on their merits. Lastly, he claims that the cumulative effect of all these errors deprived him of a fair trial.

The State argues that post-conviction court properly denied the motion to reopen because the Johnson claim does not provide a basis for reopening the post-conviction petition. The State further asserts that the Petitioner failed to properly seek review of the Hurst claim and that the Petitioner is procedurally barred from raising the additional claims for relief.

## II.    Analysis

In Harold Wayne Nichols v. State, this court analyzed a post-conviction court's review of a motion to reopen and a subsequent amendment to a first post-conviction petition made pursuant to a post-conviction court's order granting a motion to reopen. See Harold Wayne Nichols v. State, No. E2018-00626-CCA-R3-PD, 2019 WL 5079357 (Tenn. Crim. App. Oct. 10, 2019), perm. app. denied (Tenn. Jan. 15, 2020). Concerning the general availability of post-conviction relief in Tennessee, this court explained

- 9 -

> In Case v. Nebraska, 381 U.S. 336, 85 S. Ct. 1486, 14 L.Ed.2d 422 (1965), the United States Supreme Court recommended that the states implement post-conviction procedures to address alleged constitutional errors arising in state convictions in order to divert the burden of habeas corpus ligation in the federal courts. In response, the Tennessee legislature passed the Post-Conviction Procedure Act whereby a defendant may seek relief "when a conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In its current ideation, the Post-Conviction Procedure Act "contemplates the filing of only one (1) petition for post-conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment." T.C.A. § 40-30-102(c). While "any second or subsequent petition shall be summarily dismissed," a petitioner may seek relief on the basis of claims that arise after the disposition of the initial petition by filing a motion to reopen the post-conviction proceedings "under the limited circumstances set out in § 40-30-117." Id.; see Fletcher v. State, 951 S.W.2d 378, 380 (Tenn. 1997).

Harold Wayne Nichols, 2019 WL 5079357, at *3. Although Tennessee limits the filing of a post-conviction relief petition to one petition, there are limited circumstances whereby a petitioner may allege later arising claims via a motion "to reopen the first post-conviction petition." T.C.A. § 40-30-117(a). As relevant in this case, a motion to reopen a first post-conviction petition should be granted when "[t]he claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required." *Id*. § 40-30-117(a)(1). Once a motion to reopen is granted, "the procedure, relief and appellate provisions of this part shall apply." *Id*. § 40-30-117(b)(1).

"[A] post-conviction court's grant of a motion to reopen does not fully place a petitioner back into the procedural posture of his original post-conviction proceedings." Harold Wayne Nichols, 2019 WL 5079357, at *7. As noted by the Tennessee Supreme Court, claims raised in a motion to reopen and subsequent amendments may be barred by the statute of limitations, previous determination, or waiver. Coleman v. State, 341 S.W.3d 221, 255 (Tenn. 2011). Generally, a petitioner must file a petition for post-conviction relief "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred." T.C.A. § 40-30-102(a) (2018). The statutory grounds for tolling the statute of limitations are coextensive to those for granting a motion to reopen. Id. § 40-30-102(b) (2018). Thus, if an amended claim arising from a motion to reopen a post-conviction petition does not meet the requirements of Code sections 40-30-102(b) and 40-30-117(a), the claim is barred by

- 10 -

the statute of limitations. "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Id. § 40-30-106(h) (2018). Further, a claim will be treated as waived when "not raised before a court of competent jurisdiction in which the ground could have been presented." Id. § 40-30-110(f) (2018); see Coleman, 341 S.W.3d at 257 (discussing the waiver of a specific ineffective assistance of counsel claim for failing to raise it in the original post-conviction petition). The Post-Conviction Procedure Act requires the post-conviction court to summarily dismiss any claims which are raised beyond the statute of limitations, have been previously determined, or have been waived. T.C.A. § 40-30-106(b), (f). We review the post-conviction court's summary denial of relief de novo. Arnold v. State, 143 S.W.3d 784, 786 (Tenn. 2004).

A.      Johnson Motion to Reopen Allegation

In support of the motion to reopen the post-conviction petition, the Petitioner alleged that the Supreme Court's holding in Johnson rendered void the prior violent felony aggravating circumstance. While the post-conviction court preliminarily granted the motion to reopen based upon this allegation, the court ultimately determined that the decision in Johnson was inapplicable to Tennessee's prior violent felony aggravating circumstance. On appeal, the Petitioner argues that the prior violent felony aggravating circumstance is unconstitutionally vague in light of Johnson. The State asserts that the holding in Johnson is inapplicable to Tennessee's prior violent felony aggravating circumstance and, therefore, the post-conviction court properly denied the motion to reopen.

In Johnson, the Supreme Court examined the definition of a violent felony under the Armed Career Criminal Act (ACCA), which provided increased punishment for a defendant convicted of being a felon in possession of a firearm if a defendant has three or more previous convictions for a violent felony. *See* 18 U.S.C. § 924(e)(1). The ACCA defined a violent felony as

> any crime punishable by imprisonment for a term exceeding one year . . . that – (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary, arson, or involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The "otherwise involves conduct" language is referred to as the ACCA's residual clause. Johnson, 135 S. Ct. at 2556. The Court observed that the residual clause does not involve an examination of the elements of a prior offense, but instead "asks whether the crime '*involves conduct*' that presents too much risk

- 11 -

of physical injury." Id. at 2557 (emphasis in the original). The Court determined that the judicial assessment of risk under the residual clause, which was not tied to the facts concerning the particular offense or to the statutory elements, rendered the residual clause unconstitutionally vague. Id. at 2557. In so doing, however, the Court limited its holding and held that the elements clause contained in subsection (i) survived constitutional scrutiny. Id. at 2563.

This court has analyzed the application of Johnson to Tennessee's prior violent felony aggravating circumstance. See Harold Wayne Nichols, 2019 WL 5079357; see also Nicholas Todd Sutton v. State, No. E2018-00877-CCA-R3-PD, 2020 WL 525169 (Tenn. Crim. App. Jan. 31, 2020), perm. app. denied (Tenn. Feb. 13, 2020). In both Nichols and Sutton, we noted that "this Court has rejected Johnson claims with respect to both the pre- and post-1989" versions of the prior violent felony aggravating circumstance when raised in applications for permission to appeal from the denial of a motion to reopen a post-conviction petition "because our supreme court has held, that under either version of the statute, trial courts are to look to the actual facts of the prior felony to determine the use of violence when such cannot be determined by the elements of the offense alone." Harold Wayne Nichols, at *6 (citations omitted); Nicholas Todd Sutton, at *7 (quoting Nichols). Unlike the approach to the ACCA's residual clause, "our precedent has never required the use of a judicially imagined ordinary case in applying the prior violent felony." Id. "Tennessee's prior violent felony aggravating circumstance is not void for vagueness under Johnson." Id. Therefore, the Petitioner is not entitled to relief as to this claim.

### B.      Claims Raised in Amended Pleadings

### I.      Hurst Claim

The Petitioner argues that the Supreme Court's decision in Hurst announced a new rule of constitutional law requiring retrospective application that qualifies as a basis to reopen the post-conviction petition. Specific to the circumstances of the Petitioner case, the Petitioner argues that a new sentencing hearing is required because the original post-conviction court's and this court's reweighing of aggravating circumstances through harmless error analysis in addressing the erroneous application of the felony murder aggravating circumstance violated Hurst. The State asserts that this court lacks jurisdiction to review the Hurst claim because the Petitioner failed to seek permission to appeal from the post-conviction court's preliminary order denying the Petitioner's motion to reopen based upon Hurst. See Tenn. Code Ann. § 40-30-117(c); Tenn. Sup. Ct. R. 28. The State also argues that the post-conviction court correctly refused to address the Hurst claim as an amendment to the post-conviction petition based upon its previous ruling that Hurst did not provide a basis for reopening the petition.

This court has noted that "[t]here is no limit on the number of motions to reopen that may be filed [under the Post-Conviction Procedure Act], only a limit on the types of claims that may be raised." Harold Wayne Nichols, at *7, n 8. In Nichols, we opined that had the Petitioner filed a separate motion to reopen alleging a Hurst claim and it had been denied by the post-conviction court, "our jurisdiction to hear the appeal would be dependent upon whether Petitioner followed the proper procedure for seeking permission to appeal pursuant to Tennessee Code Annotated section 40-30-117(c)." Id. However, the Petitioner in this case did not file a separate motion to reopen but, instead, amended his motion to reopen with the Hurst claim. Thereafter, when the post-conviction court granted the motion to reopen, in part, based on Johnson, the Petitioner amended the post-conviction petition with the Hurst claim. Under these circumstances, we determine that the Hurst claim is properly before the court.

That said, the State correctly notes that this court has consistently held that Hurst did not announce a new constitutional rule requiring retrospective application. See, e.g., Charles Rice v. State, No. W2017-01719-CCA-R28-PD (Tenn. Crim. App. Nov. 14, 2017) (order), perm. app. denied (Tenn. Mar. 15, 2018); Richard Odom v. State, No. E2017-01027-CCA-R28-PD (Tenn. Crim. App. Oct.20, 2017) (order); Jonathan Stephenson v. State, No. E2017-01067-CCA-R28-PD (Tenn. Crim. App. Sept. 19, 2017) (order), perm. app. denied (Tenn. Jan. 18, 2018); Dennis Wade Suttles v. State, No. E2017-00840-CCA-R28-PD (Tenn. Crim. App. Sept. 18, 2017) (order), perm. app. denied (Tenn. Jan. 18, 2018); Gary W. Sutton v. State, No. E2017-01394-CCA-R28-PD (Tenn. Crim. App. Sept. 13, 2017) (order), perm. app. denied (Tenn. Jan. 18, 2018); David Lynn Jordan v. State, No. W2017-00921-CCA-R28-PD (Tenn. Crim. App. Sept. 11, 2017) (order). Therefore, the post-conviction court correctly denied the motion to reopen on that basis.

Furthermore, this court has previously analyzed and rejected a Petitioner's argument that an appellate court's reweighing of aggravating circumstances against mitigating circumstances to determine whether the erroneous application of the felony murder aggravating circumstance was harmless violated Hurst. See Harold Wayne Nichols, at *7; Nicholas Todd Sutton, at *7. "Because Hurst did not announce a new rule of constitutional law that must be applied retrospectively, this claim is procedurally barred by both the one-year statute of limitations and the one-petition rule." Harold Wayne Nichols, at *8. Additionally, the Petitioner's challenge to the harmless error analysis was previously determined to be without merit upon review by the district court in his federal habeas proceedings. See Terry Lynn King v. Ricky Bell, at *18. Most significantly, however, is that the United States Supreme Court recently reaffirmed that Hurst does not apply retroactively to collateral review. McKinney v. Arizona, __ U.S. __, 140 S. Ct. 702, 708 (2020) (citing Schriro v. Summerlin, 542 U.S. 348, 358 (2004)). In so doing, the Court also rejected McKinney's argument that an appellate court's reweighing of aggravating circumstances and mitigating circumstances, "akin to harmless error review," violates

- 13 -

Hurst, holding that "[t]his Court's precedents establish that state appellate courts may conduct a . . . reweighing of aggravating and mitigating circumstances, *and may do so in collateral proceedings* . . . ." Id. at 709 (emphasis added). The original post-conviction court's reweighing of aggravating circumstances against mitigating circumstances once the felony murder aggravator was held invalid does not run afoul of the Petitioner's Constitutional rights. The Petitioner is not entitled to relief on this issue.

## II. Brady Allegations

The Petitioner asserts that his constitutional rights were violated by the State's withholding ballistics evidence that the victim died from a single gunshot wound and impeachment evidence concerning Lori Eastman Carter. The State argues that the post-conviction court did not err by denying this claim because both claims were procedurally barred by previous determination.

The federal habeas corpus proceedings examined the Brady allegations and found them to be without merit. Terry Lynn King v. Ricky Bell, at *34-35. Further, we note that the Petitioner raised these identical allegations in a petition for a writ of error coram nobis, which the trial court denied as untimely because the petition was filed "twenty-eight years after the judgments became final, thirteen years after the discovery of the evidence during the federal habeas corpus proceedings, and almost two years after the federal district court denied relief." Terry Lynn King, at *5. On appeal, this court affirmed the denial of relief and held "that the delay in seeking coram nobis relief was unreasonable under the circumstances of this case and that due process does not preclude application of the [coram nobis] statute of limitations." Id. at *9. We conclude that these claims are procedurally barred as previously determined. The Petitioner is not entitled to relief as to these issues.

## III. Prior Violent Felony Amended Claims

The Petitioner argues that the prior violent felony aggravating circumstance was unconstitutionally applied in his case because he was denied counsel to advise him of the collateral consequences of the Grainger County guilty pleas upon which the prior violent felony aggravating circumstance is predicated and because the Grainger County offenses were adjudicated after the offenses in this case occurred. The State asserts that these claims are procedurally barred.

The federal habeas corpus proceedings examined these allegations and found them to be without merit. Terry Lynn King v. Ricky Bell, at *40-43. We conclude that these claims are procedurally barred as previously determined. To the extent that the Petitioner also failed to raise these issues in the original post-conviction petition, we further conclude

- 14 -

that they are waived and barred by the statute of limitations. The Petitioner is not entitled to relief as to these issues.

## IV. Ineffective Assistance of Counsel Allegations

The Petitioner argues that trial counsel were ineffective for failing to investigate adequately and to present evidence of his organic brain damage during both phases of the trial. The State argues that the post-conviction court did not err by denying this claim because it was previously determined in other collateral litigation.

As already recounted, the Petitioner raised myriad allegations of ineffective assistance of counsel in the original post-conviction proceedings and in the federal habeas corpus proceedings, including allegations related to the presentation of mitigation evidence. See King, 989 S.W.2d at 330-334 (original post-conviction); King, 847 F.3d at 794, 799 (federal habeas corpus proceedings addressing organic brain damage issue). We conclude that the Petitioner is precluded from raising additional ineffective assistance of counsel allegations because the ineffective assistance of counsel claim was previously litigated and determined. See Cone v. State, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995) (stating that "[a] petitioner may not relitigate a previously determined issue by presenting additional factual allegations"). The ineffective assistance of counsel claim was previously determined, and the Petitioner is not entitled to relief on this basis.

## C. Summary Denial of Post-Conviction Relief Claims

The Petitioner is not entitled to relief as to any claim alleged in the motion to reopen or in the amended and supplemental petitions. Nevertheless, the Petitioner contends that he was denied due process by the post-conviction court's summary denial of relief. As this court explained in Harold Wayne Nichols,

> the post-conviction court did not err in denying relief on any of the claims raised by Petitioner. The Johnson claim was the only one that was not procedurally barred; because that claim raised only a question of law and statutory interpretation, there was no need for an evidentiary hearing. The post-conviction court, despite its earlier finding that Petitioner had raised a colorable claim, was clearly authorized by the Post-Conviction Procedure Act to dismiss the amended petition without an evidentiary hearing upon conclusively determining that Petitioner was not entitled to relief.

Harold Wayne Nichols, at *11 (citations omitted); *see also* T.C.A. § 40-30-109(a). "All that due process requires in the post-conviction setting is that the defendant have 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" Stokes v.

State, 146 S.W.3d 56, 61 (quoting Matthews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893 (1976)). The Petitioner has been afforded due process at every stage of his direct and collateral litigation challenging his first degree murder conviction and death sentence.

D.    Cumulative Error

Finally, the Petitioner argues that "all claims of error coalesced into a unitary abridgement of [his] constitutional rights" under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I, sections 6, 7, 8, 9, 16, 17, 19, and 32 and Article XI, sections 8 and 16 of the Tennessee Constitution. "To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings." State v. Hester, 324 S.W.3d 1, 77 (Tenn. 2010). Because the Petitioner has not established any error, he is not entitled to relief pursuant to the cumulative error doctrine.

## III.    Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE